ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

MICHAEL SHVARTSMAN,
GERALD SHVARTSMAN, and
BRUCE GARELICK,

Defendants.

**SEALED INDICTMENT**

23 Cr.

**23 CRIM 307**

## COUNT ONE
### (Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

1. MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE

GARELICK, the defendants, together made more than $22 million dollars in illegal profits by

trading in securities of a special purpose acquisition corporation ("SPAC") named Digital World

Acquisition Corporation ("DWAC") based on insider information that the SPAC was going to

take public a media company owned by former U.S. President Donald J. Trump. In violation of

duties they owed to DWAC, the defendants exploited confidential information they possessed

regarding DWAC's target, its plans, and its negotiations in order to execute profitable and timely

trades.

2. As sophisticated investors, MICHAEL SHVARTSMAN, GERALD

SHVARTSMAN, and BRUCE GARELICK, the defendants, were invited to invest in DWAC,

and after signing non-disclosure agreements with DWAC and another SPAC, Benessere Capital

Acquisition Corporation ("Benessere"), were provided confidential information about DWAC's

and Benessere's potential business combination targets, which included a media company

founded by President Donald J. Trump called Trump Media & Technology Group ("Trump Media"). As a condition of receiving this information, the defendants were prohibited by the non-disclosure agreements from disclosing the confidential information they learned or using it to buy and sell securities on the open market.

3.    After MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, made an initial investment into DWAC, which was negotiated directly with DWAC rather than made on the open market, DWAC gave GARELICK a seat on DWAC's board of directors. As a board member, GARELICK had access to valuable material non-public information about DWAC's plans to merge with Trump Media. But, in contravention of his duties and responsibilities as a board member, GARELICK provided DWAC's confidential information about its merger plans to his co-conspirators, allowing them to make lucrative trades in DWAC securities. After the defendants learned about DWAC's plans to move forward with a business combination with Trump Media, but before those plans were publicly known, the defendants bought millions of dollars of DWAC securities on the open market so that they could be in a position to profit after the merger was announced publicly. In addition to their own purchases, the defendants also passed DWAC's confidential information to their friends and/or employees, who also purchased tens of thousands of DWAC securities in advance of the SPAC's merger announcement.

4.    After DWAC's merger with Trump Media was announced publicly, and the stock and warrant holdings of MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, and those they tipped, significantly increased in value, the defendants sold their securities for a significant profit.

Background

5.      Digital World Acquisition Corporation and Benessere Capital Acquisition Corporation are SPACs.  A SPAC, sometimes called a "blank check" company, is a company that has no operating business of its own at the time that it becomes a publicly traded company.  The purpose of a SPAC is to merge with a private company so that the private company may become publicly traded.  Typically, after a SPAC becomes publicly traded, it identifies several potential target operating companies, negotiates with one or more, and ultimately merges with an operating company.  After the deal is complete, the shares of the SPAC become the shares of the operating company, which then can be bought and sold by the public on a stock exchange. While not always the case, the price of shares of a SPAC often increases after a public announcement of a business combination with a private company.  The magnitude of the increase is determined, at least in part, by the market demand for shares in the target company.

6.      In early 2021, representatives of the private company Trump Media, including former President Trump, began communicating with the principals of Benessere about a potential merger to take Trump Media public through a SPAC.  Between in or about March and June 2021, Trump Media and Benessere entered into nonbinding letters of intent to merge. Those letters of intent included confidentiality provisions that specified that the information about the potential merger between Trump Media and Benessere was material non-public information that should be kept confidential.  The letters of intent did, however, provide that Benessere and its agents could share confidential information with potential investors in the SPAC.

7.      By in or about the summer of 2021, the chief executive officer of Benessere (the "CEO") was attempting to solicit investors in another, new SPAC that he managed but that had

not yet gone public—DWAC.  The CEO was introduced to MICHAEL SHVARTSMAN, the

defendant, and in June 2021, the CEO and MICHAEL SHVARTSMAN met at the offices of

Rocket One Capital LLC—a venture capital firm owned by MICHAEL SHVARTSMAN—to

discuss a potential investment in Benessere and DWAC.  MICHAEL SHVARTSMAN's brother,

GERALD SHVARTSMAN, the defendant, and Rocket One's chief investment officer, BRUCE

GARELICK, the defendant, were also present during this meeting.

8.     Before there was any substantive discussion about the SPACs, MICHAEL

SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, were

required to sign confidentiality agreements with Benessere and DWAC.  Those confidentiality

agreements stated, in sum and substance, that the defendants could use the information provided

by the SPACs only to consider whether to invest directly in DWAC or Benessere, *i.e.*, through

the purchase of "locked up" founder shares or units issued as part of the initial public offering.

The agreements also stated that the defendants could not disclose material non-public

information they learned from Benessere or DWAC, or use it to engage in securities trading on

the open market on the basis of material non-public information.  After signing the

confidentiality agreements, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and

GARELICK were provided highly confidential information about the potential business

combination targets of Benessere and DWAC, including the fact that Benessere had executed a

letter of intent with Trump Media.  Later, throughout in or about June 2021, the defendants had

additional telephone calls with the CEO, during which the CEO repeatedly stated that Trump

Media had become a likely target for DWAC.

9.     MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE

GARELICK, the defendants, decided to invest hundreds of thousands of dollars in founder

4

shares and initial public offering units of DWAC. As a condition of MICHAEL

SHVARTSMAN's large investment in the SPAC, in or about July 2021, GARELICK was

named a director of DWAC. As a director, GARELICK became subject to a code of ethics that,

among other things, prohibited his misuse of confidential information by, for instance, insider

trading.

10.    As a member of DWAC's board of directors, BRUCE GARELICK, the

defendant, was privy to material non-public information about DWAC's negotiations with

acquisition targets, including Trump Media. At the time, DWAC's potential business

combination with Trump Media was not public, and GARELICK was being provided

information that would have been highly material to DWAC's share price. For example, in or

about September 2021, GARELICK attended a DWAC board meeting at which he learned

confidential information about the potential merger targets with which DWAC planned to

negotiate letters of intent. In or around September and October 2021, GARELICK again was

provided confidential information, which he was obligated to protect and not disclose, about the

status of merger negotiations between DWAC and Trump Media, the timing of a letter of intent

and merger agreement, deal terms, and a likely closing date. After learning material non-public

information through his role on DWAC's board, GARELICK provided updates to MICHAEL

SHVARTSMAN, the defendant, about the status of the merger negotiations and the timing of a

public merger announcement, and MICHAEL SHVARTSMAN in turn provided the same

information to his brother, GERALD SHVARTSMAN, the defendant.

The Defendants' Insider Trading of DWAC Securities

11.    From in or about September through October 2021, MICHAEL SHVARTSMAN,

GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, used material non-public

5

information about the fact that Trump Media was a likely acquisition target for DWAC to make well-timed purchases of DWAC securities on the Nasdaq exchange. The defendants knew that Trump Media was a merger target for DWAC by virtue of the confidential information disclosed to them pursuant to non-disclosure agreements, as well as through non-public information that GARELICK learned as a board member, and therefore they were able to make trades that, based on that confidential information, they anticipated would be and ultimately in fact were lucrative.

12.     In order to increase their investments in DWAC, which they knew would be profitable by virtue of their knowledge of material non-public information, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, purchased DWAC units and warrants on the Nasdaq from sellers, including counterparties in the Southern District of New York, who did not have advance knowledge of the SPAC's plans. Specifically:

a.     On the first day of open market trading of DWAC, on or about September 3, 2021, BRUCE GARELICK, the defendant, purchased approximately 610 units of DWAC on the open market. On or about September 10, 2021, GARELICK purchased an additional 300 units of DWAC on the open market. On or about September 17, 2021, after learning that there would be a DWAC board meeting a few days later, GARELICK purchased 410 units of DWAC. On or about September 20, 2021, after receiving another update about the timing of the board meeting, GARELICK purchase 900 units of DWAC. That same day, GARELICK texted MICHAEL SHVARTMAN, the defendant, that he had a DWAC board meeting the next day and that he "recommended starting to buy more DWACU [DWAC unit] stock." Shortly before the start of the board meeting on or about September 21, 2021, GARELICK purchased another 1,800 units of DWAC. On or about September 23, 2021, after the board meeting and after learning that

DWAC had executed a letter of intent with Trump Media, GARELICK purchased 1,300 DWAC units. Despite being a director of DWAC, and as a further act of concealment of his insider trading, GARELICK did not make any filings on SEC Form 3 with the Securities and Exchange Commission disclosing his purchases of DWAC securities, as he was required to do so by law.

        b.     After DWAC executed a letter of intent with Trump Media on or around September 23, 2021, BRUCE GARELICK, the defendant, had several conversations with MICHAEL SHVARTSMAN, the defendant, in which he conveyed material non-public information to MICHAEL SHVARTSMAN and encouraged him to buy DWAC securities. The day after the letter of intent was signed, for instance, GARELICK texted MICHAEL SHVARTSMAN that he had "intelligence to share with you." GARELICK and MICHAEL SHVARTSMAN subsequently spoke, and on or about October 1, 2021, once DWAC warrants began trading on the Nasdaq exchange, MICHAEL SHVARTSMAN purchased 2,000,000 DWAC warrants over three days.

        c.     On or about October 7, 2021, shortly after MICHAEL SHVARTSMAN, the defendant, purchased DWAC warrants based on material non-public information, his brother, GERALD SHVARTSMAN, the defendant, purchased 275,000 DWAC warrants. Additionally, while in the possession of material non-public information, GERALD SHVARTSMAN purchased an additional 25,000 DWAC warrants on or about October 8, 2021, and 100,000 more DWAC warrants on or about October 18, 2021.

    13.    In addition to purchasing DWAC units and warrants based on material non-public information, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, also provided material non-public information to their friends and employees, in violation of the non-disclosure obligations they had to DWAC. Specifically:

     a.     On or about September 30 and October 1, 2021, MICHAEL SHVARTSMAN, the defendant, told his neighbor that he should invest in the stock and that it was a good bet. MICHAEL SHVARTSMAN, however, did not disclose to his neighbor that he had material non-public information about the stock or new its eventual merger partner. MICHAEL SHVARTSMAN's neighbor purchased approximately 1,809 DWAC shares.

     b.     In or about June 2021, MICHAEL SHVARTSMAN and BRUCE GARELICK, the defendants, shared material non-public information about DWAC and Benessere with a business associate of MICHAEL SHVARTSMAN. After DWAC's initial public offering, on or around September 8, 2021, GARELICK told the business associate that the business combination between DWAC and Trump Media was expected in six to ten weeks, and that GARELICK and MICHAEL SHVARTSMAN intended to purchase approximately $255,000 of additional DWAC securities on the open market over the next month. After receiving additional non-public information from GARELICK and MICHAEL SHVARTSMAN about DWAC's planned business combination in or around September and October 2021, MICHAEL SHVARTSMAN's business associate purchased approximately 1,000 DWAC warrants on or about October 6, 2021, and an additional 11,300 DWAC warrants on October 7, 2021.

     c.     On or about October 19, 2021, MICHAEL SHVARTSMAN and BRUCE GARELICK, the defendants, were in Las Vegas, Nevada, with a friend of MICHAEL SHVARTSMAN for a conference. That evening GARELICK participated in a virtual DWAC board meeting at which finalization of the Trump Media merger was discussed. The next morning, MICHAEL SHVARTSMAN's friend purchased 150,000 DWAC warrants about the pending but not public merger announcement. MICHAEL SHVARTSMAN's business associate

was also in Las Vegas with MICHAEL SHVARTSMAN, and he also purchased an additional 100,000 DWAC warrants on or about October 20, 2021.

d.    On or about October 18 or 19, 2021, GERALD SHVARTSMAN, the defendant, called one of the employees at his business, Source Outdoor Furniture, an outdoor furniture supply store ("Source Outdoor Employee-1"), and told him to buy DWAC warrants. GERALD SHVARTSMAN told Source Outdoor Employee-1, in sum and substance, to buy DWAC warrants because DWAC was going to merge with former President Trump's media company, the merger had been approved, the merger would be announced sometime in the next two weeks, GERALD SHVARTSMAN had invested approximately $500,000 in DWAC, and GERALD SHVARTSMAN's brother had invested up to $1 million in DWAC. Based on this tip, on or about October 19, 2021, Source Outdoor Employee-1 purchased approximately 1,301 DWAC shares on the open market prior to the announcement of the Trump Media merger. Source Outdoor Employee-1 also told two of his friends about the tip, and both of them traded DWAC's stock prior to the announcement.

e.    On or about October 19, 2021, GERALD SHVARTSMAN, the defendant, called a second employee of his business ("Source Outdoor Employee-2") and told him, in sum and substance, to buy DWAC warrants because DWAC was going to announce that it was merging with Trump Media within the next two weeks.  The same day, Source Outdoor Employee-2 purchased approximately 100,000 DWAC warrants.  Source Outdoor Employee-2 also told his father and a friend about the tip, both of whom bought DWAC warrants prior to the Trump Media merger announcement.

14.    On or about October 20, 2021, after the close of trading, a spokesperson for former President Trump posted a press release to Twitter announcing the planned merger of

DWAC and Trump Media. After the public announcement of the DWAC-Trump Media merger agreement, the share and warrant prices of DWAC increased substantially. Thereafter, BRUCE GARELICK, the defendant, sold all the DWAC securities he had purchased on the open market for a profit of approximately $49,702. MICHAEL SHVARTSMAN, the defendant, sold the DWAC securities that Rocket One purchased on the open market for a profit of approximately $18.2 million. GERALD SHVARTSMAN, the defendant, sold the DWAC securities he purchased on the open market for a profit of approximately $4.6 million.

Statutory Allegations

15.    From at least in or about June 2021 up to and including at least in or about November 2021, in the Southern District of New York and elsewhere, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, (i) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (ii) securities fraud, in violation of Title 18, United States Code, Section 1348.

16.    It was a part and object of the conspiracy that MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and a facility of a national securities exchange, would and did use and employ, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme, and artifice to defraud; (b) making an untrue

10

statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and courses of business which operated and would operate as a fraud and deceit on a person, in violation of Title 15, United States Code, Section 78j(b) and 78ff.

17.    It was further a part and object of the conspiracy that MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, and others known and unknown, would and did knowingly execute, and attempt to execute, a scheme and artifice to (a) defraud a person in connection with a security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of a security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, in violation of Title 18, United States Code, Section 1348.

Overt Acts

18.    In furtherance of the conspiracy and to effect its illegal objects, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, committed and caused to be committed the following overt acts, among others, in the Southern District of New York and elsewhere: on multiple occasions, the defendants traded or caused others to trade in DWAC securities that were listed on Nasdaq exchange with counterparties located in New York, New York.

(Title 18, United States Code, Section 371.)

11

## COUNT TWO THROUGH NINE
### (Securities Fraud)

The Grand Jury further charges:

19.    The allegations contained in paragraphs 1 through 14 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

20.    On the dates set forth below, in the Southern District of New York and elsewhere, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of the mails, and a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit on a person, to wit, while in possession of material non-public information to which they had been entrusted, and in violation of their duties of trust and confidence, used the material non-public information to execute and cause and assist others to execute the securities transactions listed below on or about the dates listed below:

| Count | Defendant(s) | Trade Date(s) | Transactions |
|---|---|---|---|
| 2 | BRUCE GARELICK | September 3 - 23, 2021 | Purchase of 4,020 units of DWAC by BRUCE GARELICK |
| 3 | BRUCE GARELICK and MICHAEL SHVARTSMAN | September 30 – October 5, 2021 | Purchase of 2,000,000 warrants of DWAC by MICHAEL SHVARTSMAN |
| 4 | BRUCE GARELICK, MICHAEL | October 7 - 18, 2021 | Purchase of 400,000 warrants of DWAC by GERALD SHVARTSMAN |

12

| | SHVARTSMAN, and GERALD SHVARTSMAN | | |
|---|---|---|---|
| 5 | MICHAEL SHVARTSMAN | October 1, 2021 | Purchase of 1,809 shares of DWAC by MICHAEL SHVARTSMAN's neighbor |
| 6 | BRUCE GARELICK, and MICHAEL SHVARTSMAN | September 13 – October 20, 2021 | Purchase of 500 units and 11,300 warrants of DWAC by MICHAEL SHVARTSMAN's business associate |
| 7 | BRUCE GARELICK, and MICHAEL SHVARTSMAN | October 20, 2021 | Purchase of 150,000 warrants of DWAC by MICHAEL SHVARTSMAN's friend |
| 8 | GERALD SHVARTSMAN | October 19, 2021 | Purchase of 1,301 shares of DWAC by Outdoor Source Employee-1 |
| 9 | GERALD SHVARTSMAN | October 20, 2021 | Purchase of 100,000 warrants of DWAC by Outdoor Source Employee-2 |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2)

## COUNT TEN
### (Securities Fraud)

The Grand Jury further charges:

21.     The allegations contained in paragraphs 1 through 14 of this Indictment are

hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

22.     From at least in or about June 2021 through at least in or about November 2021,

in the Southern District of New York and elsewhere, MICHAEL SHVARTSMAN, GERALD

SHVARTSMAN, and BRUCE GARELICK, the defendants, knowingly executed, and attempted

to execute, a scheme and artifice to (a) defraud a person in connection with a security of an

issuer with a class of securities registered under Section 12 of the Securities Exchange Act of

1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of

1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises,

money and property in connection with the purchase and sale of a security of an issuer with a

class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that

was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit,

the defendants executed a scheme to defraud DWAC and Benessere by misappropriating

material non-public information for the purpose of executing securities transactions in DWAC.

(Title 18, United States Code, Sections 1348 and 2.)

### FORFEITURE ALLEGATIONS

23.    As a result of committing the offenses alleged in Counts One through Ten of this

Indictment, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK,

the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section

981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and

personal, that constitutes or is derived from proceeds traceable to the commission of said offenses,

including but not limited to a sum of money in United States currency representing the amount of

proceeds traceable to the commission of said offenses.

Substitute Assets Provision

24.    If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON
4/26/23

DAMIAN WILLIAMS
United States Attorney