# **Exhibit N**

# 23 MAG 7117

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

        -v.-

ANY AND ALL FUNDS IN ACCOUNT
NUMBER 10511067 IN THE NAME OF EFT
BUSINESS SERVICES LLC AT SNB BANK,
N.A. AND ANY AND ALL FUNDS
TRACEABLE THERETO,

        Defendant-in-rem.

- - - - - - - - - - - - - - - - - - - - - - - - - - x

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT
OF SEIZURE WARRANT
PURSUANT TO
18 U.S.C. § 981 AND 28 U.S.C.
§ 2461, AND 18 U.S.C. § 982
AND 21 U.S.C. § 853

STATE OF NEW YORK        )
COUNTY OF NEW YORK       :ss.:
SOUTHERN DISTRICT OF NEW YORK  )

      CHRISTOPHER CUTAIA, Special Agent, Homeland Security Investigations, being

duly sworn, hereby deposes and states as follows:

      1.      I am a Special Agent with the Department of Homeland Security, Homeland

Security Investigations ("HSI") and have been employed by HSI for approximately 5 years. As

part of my responsibilities, I have participated in numerous investigations into criminal offenses

involving securities, wire and bank fraud and money laundering, and am familiar with the means

and methods used to commit such offenses. As a result of my training and experience, I am

familiar with the techniques and methods of operations used by individuals involved in criminal

activity to conceal their activities from detection by law enforcement officers.   From my

1

examination of reports and records and my conversations with other law enforcement agents and other individuals, I am familiar with the facts and circumstances set forth below.

2.     This affidavit is submitted in support of the United States of America's Application for the issuance of a seizure warrant, pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461, as well as 18 U.S.C. § 982 and 21 U.S.C. § 853 for the following property: Any and all funds in account number 10511067 (the "Target Account") in the name of EFT Business Services LLC at SNB Bank, N.A. and any and all funds traceable thereto.

3.     As set forth below, there is probable cause to believe that the Target Account is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and 982 as property involved in violations of 18 U.S.C. § 1956 (money laundering and money laundering conspiracy).

4.     This affidavit is based upon my personal knowledge, my review of documents and other evidence; my conversations with other law enforcement personnel and other individuals; and my training and experience in financial and other white-collar crimes, including embezzlement.   Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.   Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.     Previously, on or about June 26, 2023, a grand jury in the Southern District of New York indicted MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371; and ten

SDNY_04_00018459

counts of substantive securities fraud, in violation of 18 U.S.C. § 1348 (the "Indictment").   The

Indictment is attached hereto as Exhibit A and is incorporated by reference herein.

## STATUTORY BASIS FOR FORFEITURE

6.      Title 18, United States Code, Section 981(a)(1)(A) subjects to civil and criminal

forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in

violation of" Title 18, United States Code, Section 1956 "or any or any property traceable to

such property."   18 U.S.C. § 981(a)(1)(A); *see also* 28 U.S.C. § 2461(c) (authorizing criminal

forfeiture for persons convicted of an offense for which Congress has provided civil or criminal

forfeiture of property).

7.      Title 18, United States Code, Section 982 subjects to criminal forfeiture "any

property, real or personal, involved in [a violation of 18 U.S.C. §§ 1956, 1957, or 1960] . . . , or

any property traceable to such property."

8.      Title 18, United States Code, Section 1956(a)(1)(B)(i) provides that any person

who:

> knowing that the property involved in a financial transaction involves the proceeds of
> some form of unlawful activity, conducts or attempts to conduct such a financial
> transaction which in fact involves the proceeds of specified unlawful activity –
>
> (B)      knowing that the transaction is designed in whole or in part—
>
> (i)   to conceal or disguise the nature, the location, the source, the ownership, or
> the control of the proceeds of specified unlawful activity [shall be guilty of a
> crime.]

9.      As defined in Title 18, United States Code, Section 1956(c)(7)(A), "specified

unlawful activity" includes, among other things, a violation of Title 18, United States Code,

Section 1343.   *See* 18 U.S.C. §§ 1956(c)(7) and 1961(1).

3

10.     The Court is empowered by 18 U.S.C. § 981(b) to issue a seizure warrant for any property subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).   Section 981(b)(2) provides that such a seizure may be made "pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure."   In addition, Section 981(b)(3) provides that, notwithstanding the provisions of Federal Rule of Criminal Procedure 41(a), a seizure warrant may be issued pursuant to Section 981(b) by a judicial officer in any district in which a forfeiture action against the property may be filed under Title 28, United States Code, Section 1355(b).   Under Section 1355(b)(1)(A), a forfeiture action or proceeding may be brought in the district in which any of the acts or omissions giving rise to the forfeiture occurred.   As set forth in the Indictment, the offenses underlying the requested seizure warrant included acts or omissions occurring in the Southern District of New York.

11.     With respect to forfeiture of property pursuant to 18 U.S.C. § 982, Congress has provided that the forfeiture, seizure, and disposition of such property is governed by the provisions of 21 U.S.C. § 853 (other than subsection (d) of that section).   Title 18, United States Code, Section 853(f) empowers the Court to issue a seizure warrant for property subject to forfeiture "in the same manner as a search warrant" if a protective order under subsection (e) "may not be sufficient to assure the availability of property for forfeiture."   18 U.S.C. § 853(f).

## PROBABLE CAUSE AS TO THE TARGET ACCOUNT

12.     As detailed in the Indictment, which is attached as Exhibit A and incorporated by reference herein, from at least in or about June 2021 up through and including in or about November 2021, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, together made more than $22 million dollars in illegal profits by

4

SDNY_04_00018461

trading in securities of a special purpose acquisition corporation ("SPAC") named Digital World Acquisition Corporation ("DWAC") based on material non-public information that the SPAC was going to take public a media company owned by former U.S. President Donald J. Trump. In violation of duties they owed to DWAC, the defendants exploited confidential information they possessed regarding DWAC's target, its plans, and its negotiations in order to execute profitable and timely trades.

*The Insider Trading Scheme*

13.    From in or about September through October 2021, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, used material non-public information about the fact that Trump Media was a likely acquisition target for DWAC to make well-timed purchases of DWAC securities on the Nasdaq exchange.   The defendants knew that Trump Media was a merger target for DWAC by virtue of the confidential information disclosed to them pursuant to non-disclosure agreements they signed, as well as through non-public information that GARELICK learned as a board member, and therefore they were able to make trades that, based on that confidential information, they anticipated would be and ultimately in fact were lucrative.

14.    In order to increase their investments in DWAC, which they knew would be profitable by virtue of their knowledge of material non-public information, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, purchased DWAC units and warrants on the Nasdaq from sellers, including counterparties in the Southern District of New York, who did not have advance knowledge of the SPAC's plans.

15.    After DWAC executed a letter of intent with Trump Media on or around

5

September 23, 2021, BRUCE GARELICK, the defendant, had several conversations with MICHAEL SHVARTSMAN, the defendant, in which he conveyed material non-public information to MICHAEL SHVARTSMAN regarding the planned business combination between DWAC and Trump Media and encouraged him to buy DWAC securities.   On or about October 1, 2021, once DWAC warrants began trading on the Nasdaq exchange, MICHAEL SHVARTSMAN purchased 2,000,000 DWAC warrants over three days. To make those purchases, SHVARTSMAN used a brokerage account opened at RBC Capital in the name of "Rocket One Capital LLC," for which SHVARTSMAN was the sole signatory (the "Rocket One RBC Account").

16.     In addition to purchasing DWAC units and warrants based on material non-public information, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, also provided material non-public information to their friends and employees, in violation of the non-disclosure obligations they had to DWAC.   Specifically: In or about June 2021, MICHAEL SHVARTSMAN and BRUCE GARELICK, the defendants, shared material non-public information about DWAC with ERIC HANNELIUS, a business associate of MICHAEL SHVARTSMAN.[1]   After DWAC's initial public offering, on or around September 8, 2021, GARELICK told HANNELIUS that the business combination between

---

[1] Based on my review of correspondence between the Government and counsel for MICHAEL SHVARTSMAN, I have learned that, in August 2023, in connection with a bail modification request to allow SHVARTSMAN and HANNELIUS to communicate, SHVARTSMAN's counsel represented that HANNELIUS was "an important business associate" of SHVARTSMAN's with whom SHVARTSMAN "has been a business partner and co-investor … for many years," and that, before SHVARTSMAN's arrest in this case, SHVARTSMAN and HANNELIUS spoke "multiple times per day" and collaborated on multiple businesses "on a daily basis."

SDNY_04_00018463

DWAC and Trump Media was expected in six to ten weeks, and that GARELICK and MICHAEL SHVARTSMAN intended to purchase approximately $255,000 of additional DWAC securities on the open market over the next month.   After receiving additional non-public information from GARELICK and MICHAEL SHVARTSMAN about DWAC's planned business combination in or around September and October 2021, HANNELIUS purchased approximately 1,000 DWAC warrants on or about October 6, 2021, and an additional 11,300 DWAC warrants on October 7, 2021.

     17.    On or about October 19, 2021, MICHAEL SHVARTSMAN and BRUCE GARELICK, the defendants, were in Las Vegas, Nevada, with a friend of MICHAEL SHVARTSMAN for a conference.   That evening GARELICK participated in a virtual DWAC board meeting at which finalization of the Trump Media merger was discussed.   The next morning, MICHAEL SHVARTSMAN's friend purchased 150,000 DWAC warrants about the pending but not public merger announcement.   ERIC HANNELIUS was also in Las Vegas with MICHAEL SHVARTSMAN, and HANNELIUS also purchased an additional 100,000 DWAC warrants on or about October 20, 2021.

     18.    On or about October 20, 2021, after the close of trading, a spokesperson for former President Trump posted a press release to Twitter announcing the planned merger of DWAC and Trump Media.   After the public announcement of the DWAC-Trump Media merger agreement, the share and warrant prices of DWAC increased substantially.   Thereafter, MICHAEL SHVARTSMAN, the defendant, sold the DWAC securities in the Rocket One RBC Account that were purchased on the open market for a profit of approximately $18.2 million. There were no other transactions in the Rocket One RBC Account during the relevant time

SDNY_04_00018464

period.

19.     Based on my conversations with other law enforcement agents and my review of a witness interview report for the broker for the Rocket One RBC Account (the "Broker"), I have learned that the Broker was physically located in the Southern District of New York during the relevant securities transactions discussed above, and that the Broker spoke with MICHAEL SHVARTSMAN via electronic communications including telephone, email, and Zoom about SHVARTSMAN's investment in DWAC and purchase of DWAC warrants.

*Concealing Proceeds Through an ATM Business– the "Transact First Wash Account"*

20.     Based on my review of financial records, I have learned that, on or about December 10, 2021, approximately $8,444,226.28 was transferred from the Rocket One RBC Account to a bank account ending in 8842 at Optimum Bank in the name of Rocket One Capital LLC, for which MICHAEL SHVARTSMAN was the sole signatory (the "Rocket One 8842 Account"). That same day, the same amount of money, $8,444,226.28, was transferred from the Rocket One 8842 Account to a bank account ending in 0186 at Optimum Bank in the name of Rocket Holdings LLC, for which MICHAEL SHVARTSMAN was the sole signatory (the "Rocket Holdings 0186 Account").

21.     Based on my review of financial records, I have learned that, from December 10 through December 14, 2021, the same amount of money, $8,444,226.28, was transferred from the Rocket Holdings 0186 Account to a bank account ending 0880 at SNB Bank in the name of Transact First Inc., for which ERIC HANNELIUS and Oksana Moore are listed as the current signatories (the "Transact First Wash Account."). Those transfers were as follows:

| **Date** | **Amount** |
| --- | --- |

8

| December 10, 2021 | $2,000,000 |
| December 14, 2021 | $5,000,000 |
| December 14, 2021 | $1,273,134.05 |
| December 14, 2021 | $171,092.63 |

22.    Based on my review of financial records and my conversations with a representative of SNB Bank, I have learned the following about the Transact First Wash Account.

a.    The Transact First Wash Account account opening application stated that Transact First's business was as a payment processor, that Transact First intended to use the account as an "operating bank account" with the regular source of funds/deposits as "payment processing fees and deposits."

b.    Transact First Inc. was incorporated by MICHAEL SHVARTSMAN. SHVARTSMAN was added as a signatory to the Transact First Wash Account and listed as a beneficial owner in Transact First Inc. in or about February 2023.

c.    From approximately December 2021 through approximately April 2022, the Transact First Wash Account received approximately $498 million, i.e., half a billion dollars, in transfers into the account. During the same time period, approximately $514 million was transferred out of the Transact First Wash Account.

d.    The majority of these transactions were for so-called "ATM Transfers," which I have learned refers to large daily cash transfers that relate to Transact First's business as a "back-end" processor for ATMs. A single ATM transfer, for example, on December 10, 2021,

9

amounted to $3,205,334.35, and was supported by a "daily funding file" showing all ACH transfers in connection with Transact First's ATM business for that day.

e.      Based on my training, experience, and investigation in this case, I know that the amount of cash regularly moving through a business account like the Transact First Wash Account makes it a convenient tool to conceal the proceeds of illegal activity, as the sheer volume of high-dollar transactions in the Transact First Wash Account makes the transfers I described in paragraph 19 more inconspicuous.

23.      Based on my review of financial records, I have learned that the Transact First Wash Account was also used to accomplish "round trip" transactions that, based on my training and experience, serve the purpose of concealing or disguising the nature, the location, the source, the ownership, or the control of the proceeds of illegal activity and generally lack any legitimate business purpose. For example, after the above-described transfers from the Rocket Holdings 0186 Account to the Transact First Wash Account, on or about January 26, 2022, approximately $1,198,088.71 was transferred from the Transact First Wash Account to an account ending 0869 at SNB Bank Account in the name of Transact First Inc., for which ERIC HANNELIUS and Oksana Moore are listed as the current signatories (the "Transact First 0869 Account"). On or about February 4, 2022, approximately $2,000,000 was transferred from the Transact First 0869 Account back to the Rocket Holdings 0186 Account.  And on or about February 23, 2022, an additional $403,261.20 was transferred from the Transact First Wash Account to the Transact First 0869 Account.

*Transfers to the Target Account*

10

24.    Based on my review of financial records, I have learned that from in or about December 2021 up through and including in or about April 2022, approximately $8,511,618.30 was transferred from the Transact First Wash Account to the Target Account through two separate financial avenues.

25.    First, on or about December 15, 2021, approximately $3,000,000 was transferred from the Transact First Wash Account to an account ending in 8012 at Boston Private Bank in the name of Transaction Services LLC, for which ERIC HANNELIUS is a signatory (the "Transaction Services 8012 Account"). On or about December 16, 2021, approximately $2,800,000 was transferred from the Transaction Services 8012 Account to an account ending in 5445 at Citibank in the name of Encompay Inc., for which ERIC HANNELIUS is a signatory (the "Encompay Account"). And on December 16, 2021, approximately $1,000,000 was transferred from the Encompay Account to the Target Account.

26.    Second, from March 4, 2022 through April 8, 2022, approximately $7,511,618.30 was transferred from the Transact First Wash Account to the Target Account as follows:

| Date | Amount |
|------|--------|
| March 4, 2022 | $654,896.39 |
| March 18, 2022 | $32,595.00 |
| March 31, 2022 | $6,797,603.91 |
| April 8, 2022 | $26,523.00 |

27.    Based on my training, experience, and investigation in this case, I believe that the transfers from the Transact First Wash Account to the Target Account, both through the Transact

11

Service 8012 Account/Encompay Account path and directly from the Transact First Wash Account, were further transfers intended to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the insider trading scheme by adding layers of financial transfers between the source of the proceeds and their destination.

28.    On or about June 30, 2023, the day after MICHAEL SHVARTSMAN was arrested in connection with the above-referenced Indictment, HANNELIUS emailed SNB Bank to remove SHVARTSMAN as a signatory on the Target Account. HANNELIUS's stated reason, in sum and substance, was that "We have reviewed our account signatories and have determined that Michael Shvartsman should no longer have signing authority on this account. Therefore, we kindly request that you take the necessary steps to remove Michael's name from the account and update the signatory information accordingly."[2] Based on my training, experience, and investigation in this case, I believe that HANNELIUS requested that SHVARTSMAN be removed from the Target Account to further conceal the above-described money laundering.

29.    From my knowledge and experience as a law enforcement officer, I am aware that property on deposit in a bank or brokerage account can be moved and easily hidden.   Such property is capable of rapid movement due to modern technology such as electronic transfer mechanisms, which are virtually instantaneous.   Indeed, with respect to the Target Account over the time period September 29, 2023 through October 24, 2023, the Target Account balance

_____

[2] In addition to the Target Account, HANNELIUS asked SNB Bank to remove SHVARTSMAN as a signatory from at least 18 other accounts on which SHVARTSMAN was previously a signatory, including the Transact First Wash Account.   I have also learned that Oksana Moore emailed SNB Bank several letters dated June 30, 2023, all signed by SHVARTSMAN wherein SHVARTSMAN requested to be removed as a signatory from three additional accounts held at SNB Bank and replaced with Moore.

SDNY_04_00018469

fluctuated as high as approximately $44 million and as low as approximately $7.8 million. Indeed, from the close of business on October 25, 2023 to the morning hours of October 26, 2023, approximately $5 million was moved out the Target Account.   I am aware of situations in other federal forfeiture cases where, by mistake or otherwise, an accountholder was able to withdraw large amounts of money from accounts that were subject to a restraining order issued under the federal forfeiture laws.   I therefore believe that a restraining order would not be sufficient to assure the availability of the Target Account for forfeiture pursuant to 18 U.S.C. § 982.

30.    Other than the Target Account, the above-mentioned accounts are all now closed. In light of the rapid movement of property through the Target Account in the preceding weeks, on or about October 26, 2023, law enforcement agents conducted a warrantless seizure of the Target Account.   As of October 27, 2023, the balance in the Target Account is approximately $15.6 million.

31.    Accordingly, there is probable cause to believe that the Target Account is property "involved in" a conspiracy to commit money laundering and substantive money laundering of the proceeds of a scheme to commit insider trading, in violation of 18 U.S.C. § 1956.

SDNY_04_00018470

## **CONCLUSION**

32.    Based on the foregoing, I submit that there is probable cause to believe that the

Target Account is subject to forfeiture as property involved in violations of 18 U.S.C. § 1956.

Accordingly, pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853, I respectfully request that the

Court issue a warrant authorizing the seizure of the Target Account.

/s authorized electronic signature

_____
CHRISTOPHER CUTAIA
Special Agent
Homeland Security Investigations

Sworn to me through the transmission
of this Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1, this 7th day of November, 2023

_____
HON. SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

14

SDNY_04_00018471

# Exhibit A

SDNY_04_00018472

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED INDICTMENT** |
| v. | 23 Cr. |
| MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, |  |
| Defendants. | |

## COUNT ONE
### (Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

1.      MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE
GARELICK, the defendants, together made more than $22 million dollars in illegal profits by
trading in securities of a special purpose acquisition corporation ("SPAC") named Digital World
Acquisition Corporation ("DWAC") based on insider information that the SPAC was going to
take public a media company owned by former U.S. President Donald J. Trump.  In violation of
duties they owed to DWAC, the defendants exploited confidential information they possessed
regarding DWAC's target, its plans, and its negotiations in order to execute profitable and timely
trades.

2.      As sophisticated investors, MICHAEL SHVARTSMAN, GERALD
SHVARTSMAN, and BRUCE GARELICK, the defendants, were invited to invest in DWAC,
and after signing non-disclosure agreements with DWAC and another SPAC, Benessere Capital
Acquisition Corporation ("Benessere"), were provided confidential information about DWAC's
and Benessere's potential business combination targets, which included a media company

founded by President Donald J. Trump called Trump Media & Technology Group ("Trump Media"). As a condition of receiving this information, the defendants were prohibited by the non-disclosure agreements from disclosing the confidential information they learned or using it to buy and sell securities on the open market.

3.    After MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, made an initial investment into DWAC, which was negotiated directly with DWAC rather than made on the open market, DWAC gave GARELICK a seat on DWAC's board of directors. As a board member, GARELICK had access to valuable material non-public information about DWAC's plans to merge with Trump Media. But, in contravention of his duties and responsibilities as a board member, GARELICK provided DWAC's confidential information about its merger plans to his co-conspirators, allowing them to make lucrative trades in DWAC securities. After the defendants learned about DWAC's plans to move forward with a business combination with Trump Media, but before those plans were publicly known, the defendants bought millions of dollars of DWAC securities on the open market so that they could be in a position to profit after the merger was announced publicly. In addition to their own purchases, the defendants also passed DWAC's confidential information to their friends and/or employees, who also purchased tens of thousands of DWAC securities in advance of the SPAC's merger announcement.

4.    After DWAC's merger with Trump Media was announced publicly, and the stock and warrant holdings of MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, and those they tipped, significantly increased in value, the defendants sold their securities for a significant profit.

SDNY_04_00018474

Background

5.      Digital World Acquisition Corporation and Benessere Capital Acquisition Corporation are SPACs. A SPAC, sometimes called a "blank check" company, is a company that has no operating business of its own at the time that it becomes a publicly traded company. The purpose of a SPAC is to merge with a private company so that the private company may become publicly traded. Typically, after a SPAC becomes publicly traded, it identifies several potential target operating companies, negotiates with one or more, and ultimately merges with an operating company. After the deal is complete, the shares of the SPAC become the shares of the operating company, which then can be bought and sold by the public on a stock exchange. While not always the case, the price of shares of a SPAC often increases after a public announcement of a business combination with a private company. The magnitude of the increase is determined, at least in part, by the market demand for shares in the target company.

6.      In early 2021, representatives of the private company Trump Media, including former President Trump, began communicating with the principals of Benessere about a potential merger to take Trump Media public through a SPAC. Between in or about March and June 2021, Trump Media and Benessere entered into nonbinding letters of intent to merge. Those letters of intent included confidentiality provisions that specified that the information about the potential merger between Trump Media and Benessere was material non-public information that should be kept confidential. The letters of intent did, however, provide that Benessere and its agents could share confidential information with potential investors in the SPAC.

7.      By in or about the summer of 2021, the chief executive officer of Benessere (the "CEO") was attempting to solicit investors in another, new SPAC that he managed but that had

3

SDNY_04_00018475

not yet gone public—DWAC.  The CEO was introduced to MICHAEL SHVARTSMAN, the

defendant, and in June 2021, the CEO and MICHAEL SHVARTSMAN met at the offices of

Rocket One Capital LLC—a venture capital firm owned by MICHAEL SHVARTSMAN—to

discuss a potential investment in Benessere and DWAC.  MICHAEL SHVARTSMAN's brother,

GERALD SHVARTSMAN, the defendant, and Rocket One's chief investment officer, BRUCE

GARELICK, the defendant, were also present during this meeting.

       8.     Before there was any substantive discussion about the SPACs, MICHAEL

SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, were

required to sign confidentiality agreements with Benessere and DWAC.  Those confidentiality

agreements stated, in sum and substance, that the defendants could use the information provided

by the SPACs only to consider whether to invest directly in DWAC or Benessere, *i.e.*, through

the purchase of "locked up" founder shares or units issued as part of the initial public offering.

The agreements also stated that the defendants could not disclose material non-public

information they learned from Benessere or DWAC, or use it to engage in securities trading on

the open market on the basis of material non-public information.  After signing the

confidentiality agreements, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and

GARELICK were provided highly confidential information about the potential business

combination targets of Benessere and DWAC, including the fact that Benessere had executed a

letter of intent with Trump Media.  Later, throughout in or about June 2021, the defendants had

additional telephone calls with the CEO, during which the CEO repeatedly stated that Trump

Media had become a likely target for DWAC.

       9.     MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE

GARELICK, the defendants, decided to invest hundreds of thousands of dollars in founder

SDNY_04_00018476

shares and initial public offering units of DWAC. As a condition of MICHAEL

SHVARTSMAN's large investment in the SPAC, in or about July 2021, GARELICK was

named a director of DWAC. As a director, GARELICK became subject to a code of ethics that,

among other things, prohibited his misuse of confidential information by, for instance, insider

trading.

10.    As a member of DWAC's board of directors, BRUCE GARELICK, the

defendant, was privy to material non-public information about DWAC's negotiations with

acquisition targets, including Trump Media. At the time, DWAC's potential business

combination with Trump Media was not public, and GARELICK was being provided

information that would have been highly material to DWAC's share price. For example, in or

about September 2021, GARELICK attended a DWAC board meeting at which he learned

confidential information about the potential merger targets with which DWAC planned to

negotiate letters of intent. In or around September and October 2021, GARELICK again was

provided confidential information, which he was obligated to protect and not disclose, about the

status of merger negotiations between DWAC and Trump Media, the timing of a letter of intent

and merger agreement, deal terms, and a likely closing date. After learning material non-public

information through his role on DWAC's board, GARELICK provided updates to MICHAEL

SHVARTSMAN, the defendant, about the status of the merger negotiations and the timing of a

public merger announcement, and MICHAEL SHVARTSMAN in turn provided the same

information to his brother, GERALD SHVARTSMAN, the defendant.

<u>The Defendants' Insider Trading of DWAC Securities</u>

11.    From in or about September through October 2021, MICHAEL SHVARTSMAN,

GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, used material non-public

SDNY_04_00018477

information about the fact that Trump Media was a likely acquisition target for DWAC to make

well-timed purchases of DWAC securities on the Nasdaq exchange. The defendants knew that

Trump Media was a merger target for DWAC by virtue of the confidential information disclosed

to them pursuant to non-disclosure agreements, as well as through non-public information that

GARELICK learned as a board member, and therefore they were able to make trades that, based

on that confidential information, they anticipated would be and ultimately in fact were lucrative.

12.        In order to increase their investments in DWAC, which they knew would be

profitable by virtue of their knowledge of material non-public information, MICHAEL

SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants,

purchased DWAC units and warrants on the Nasdaq from sellers, including counterparties in the

Southern District of New York, who did not have advance knowledge of the SPAC's plans.

Specifically:

      a.        On the first day of open market trading of DWAC, on or about September

3, 2021, BRUCE GARELICK, the defendant, purchased approximately 610 units of DWAC on

the open market. On or about September 10, 2021, GARELICK purchased an additional 300

units of DWAC on the open market. On or about September 17, 2021, after learning that there

would be a DWAC board meeting a few days later, GARELICK purchased 410 units of DWAC.

On or about September 20, 2021, after receiving another update about the timing of the board

meeting, GARELICK purchase 900 units of DWAC. That same day, GARELICK texted

MICHAEL SHVARTMAN, the defendant, that he had a DWAC board meeting the next day and

that he "recommended starting to buy more DWACU [DWAC unit] stock." Shortly before the

start of the board meeting on or about September 21, 2021, GARELICK purchased another 1,800

units of DWAC. On or about September 23, 2021, after the board meeting and after learning that

SDNY_04_00018478

DWAC had executed a letter of intent with Trump Media, GARELICK purchased 1,300 DWAC units. Despite being a director of DWAC, and as a further act of concealment of his insider trading, GARELICK did not make any filings on SEC Form 3 with the Securities and Exchange Commission disclosing his purchases of DWAC securities, as he was required to do so by law.

b.    After DWAC executed a letter of intent with Trump Media on or around September 23, 2021, BRUCE GARELICK, the defendant, had several conversations with MICHAEL SHVARTSMAN, the defendant, in which he conveyed material non-public information to MICHAEL SHVARTSMAN and encouraged him to buy DWAC securities. The day after the letter of intent was signed, for instance, GARELICK texted MICHAEL SHVARTSMAN that he had "intelligence to share with you." GARELICK and MICHAEL SHVARTSMAN subsequently spoke, and on or about October 1, 2021, once DWAC warrants began trading on the Nasdaq exchange, MICHAEL SHVARTSMAN purchased 2,000,000 DWAC warrants over three days.

c.    On or about October 7, 2021, shortly after MICHAEL SHVARTSMAN, the defendant, purchased DWAC warrants based on material non-public information, his brother, GERALD SHVARTSMAN, the defendant, purchased 275,000 DWAC warrants. Additionally, while in the possession of material non-public information, GERALD SHVARTSMAN purchased an additional 25,000 DWAC warrants on or about October 8, 2021, and 100,000 more DWAC warrants on or about October 18, 2021.

13.    In addition to purchasing DWAC units and warrants based on material non-public information, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, also provided material non-public information to their friends and employees, in violation of the non-disclosure obligations they had to DWAC. Specifically:

7

a.    On or about September 30 and October 1, 2021, MICHAEL

SHVARTSMAN, the defendant, told his neighbor that he should invest in the stock and that it

was a good bet. MICHAEL SHVARTSMAN, however, did not disclose to his neighbor that he

had material non-public information about the stock or new its eventual merger partner.

MICHAEL SHVARTSMAN's neighbor purchased approximately 1,809 DWAC shares.

b.    In or about June 2021, MICHAEL SHVARTSMAN and BRUCE

GARELICK, the defendants, shared material non-public information about DWAC and

Benessere with a business associate of MICHAEL SHVARTSMAN. After DWAC's initial

public offering, on or around September 8, 2021, GARELICK told the business associate that the

business combination between DWAC and Trump Media was expected in six to ten weeks, and

that GARELICK and MICHAEL SHVARTSMAN intended to purchase approximately $255,000

of additional DWAC securities on the open market over the next month. After receiving

additional non-public information from GARELICK and MICHAEL SHVARTSMAN about

DWAC's planned business combination in or around September and October 2021, MICHAEL

SHVARTSMAN's business associate purchased approximately 1,000 DWAC warrants on or

about October 6, 2021, and an additional 11,300 DWAC warrants on October 7, 2021.

c.    On or about October 19, 2021, MICHAEL SHVARTSMAN and BRUCE

GARELICK, the defendants, were in Las Vegas, Nevada, with a friend of MICHAEL

SHVARTSMAN for a conference. That evening GARELICK participated in a virtual DWAC

board meeting at which finalization of the Trump Media merger was discussed. The next

morning, MICHAEL SHVARTSMAN's friend purchased 150,000 DWAC warrants about the

pending but not public merger announcement. MICHAEL SHVARTSMAN's business associate

8

was also in Las Vegas with MICHAEL SHVARTSMAN, and he also purchased an additional 100,000 DWAC warrants on or about October 20, 2021.

        d.      On or about October 18 or 19, 2021, GERALD SHVARTSMAN, the defendant, called one of the employees at his business, Source Outdoor Furniture, an outdoor furniture supply store ("Source Outdoor Employee-1"), and told him to buy DWAC warrants. GERALD SHVARTSMAN told Source Outdoor Employee-1, in sum and substance, to buy DWAC warrants because DWAC was going to merge with former President Trump's media company, the merger had been approved, the merger would be announced sometime in the next two weeks, GERALD SHVARTSMAN had invested approximately $500,000 in DWAC, and GERALD SHVARTSMAN's brother had invested up to $1 million in DWAC. Based on this tip, on or about October 19, 2021, Source Outdoor Employee-1 purchased approximately 1,301 DWAC shares on the open market prior to the announcement of the Trump Media merger. Source Outdoor Employee-1 also told two of his friends about the tip, and both of them traded DWAC's stock prior to the announcement.

        e.      On or about October 19, 2021, GERALD SHVARTSMAN, the defendant, called a second employee of his business ("Source Outdoor Employee-2") and told him, in sum and substance, to buy DWAC warrants because DWAC was going to announce that it was merging with Trump Media within the next two weeks. The same day, Source Outdoor Employee-2 purchased approximately 100,000 DWAC warrants. Source Outdoor Employee-2 also told his father and a friend about the tip, both of whom bought DWAC warrants prior to the Trump Media merger announcement.

        14.      On or about October 20, 2021, after the close of trading, a spokesperson for former President Trump posted a press release to Twitter announcing the planned merger of

SDNY_04_00018481

DWAC and Trump Media. After the public announcement of the DWAC-Trump Media merger agreement, the share and warrant prices of DWAC increased substantially. Thereafter, BRUCE GARELICK, the defendant, sold all the DWAC securities he had purchased on the open market for a profit of approximately $49,702. MICHAEL SHVARTSMAN, the defendant, sold the DWAC securities that Rocket One purchased on the open market for a profit of approximately $18.2 million. GERALD SHVARTSMAN, the defendant, sold the DWAC securities he purchased on the open market for a profit of approximately $4.6 million.

Statutory Allegations

15.    From at least in or about June 2021 up to and including at least in or about November 2021, in the Southern District of New York and elsewhere, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, (i) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (ii) securities fraud, in violation of Title 18, United States Code, Section 1348.

16.    It was a part and object of the conspiracy that MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and a facility of a national securities exchange, would and did use and employ, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme, and artifice to defraud; (b) making an untrue

10

SDNY_04_00018482

statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and courses of business which operated and would operate as a fraud and deceit on a person, in violation of Title 15, United States Code, Section 78j(b) and 78ff.

17.    It was further a part and object of the conspiracy that MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, and others known and unknown, would and did knowingly execute, and attempt to execute, a scheme and artifice to (a) defraud a person in connection with a security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of a security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, in violation of Title 18, United States Code, Section 1348.

Overt Acts

18.    In furtherance of the conspiracy and to effect its illegal objects, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, committed and caused to be committed the following overt acts, among others, in the Southern District of New York and elsewhere: on multiple occasions, the defendants traded or caused others to trade in DWAC securities that were listed on Nasdaq exchange with counterparties located in New York, New York.

(Title 18, United States Code, Section 371.)

11

SDNY_04_00018483

## COUNT TWO THROUGH NINE
### (Securities Fraud)

The Grand Jury further charges:

19.    The allegations contained in paragraphs 1 through 14 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

20.    On the dates set forth below, in the Southern District of New York and elsewhere, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, willfully and knowingly, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of the mails, and a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit on a person, to wit, while in possession of material non-public information to which they had been entrusted, and in violation of their duties of trust and confidence, used the material non-public information to execute and cause and assist others to execute the securities transactions listed below on or about the dates listed below:

| Count | Defendant(s) | Trade Date(s) | Transactions |
|-------|--------------|---------------|--------------|
| 2 | BRUCE GARELICK | September 3 - 23, 2021 | Purchase of 4,020 units of DWAC by BRUCE GARELICK |
| 3 | BRUCE GARELICK and MICHAEL SHVARTSMAN | September 30 – October 5, 2021 | Purchase of 2,000,000 warrants of DWAC by MICHAEL SHVARTSMAN |
| 4 | BRUCE GARELICK, MICHAEL | October 7 - 18, 2021 | Purchase of 400,000 warrants of DWAC by GERALD SHVARTSMAN |

12

| | | | |
|---|---|---|---|
| | SHVARTSMAN, and GERALD SHVARTSMAN | | |
| 5 | MICHAEL SHVARTSMAN | October 1, 2021 | Purchase of 1,809 shares of DWAC by MICHAEL SHVARTSMAN's neighbor |
| 6 | BRUCE GARELICK, and MICHAEL SHVARTSMAN | September 13 – October 20, 2021 | Purchase of 500 units and 11,300 warrants of DWAC by MICHAEL SHVARTSMAN's business associate |
| 7 | BRUCE GARELICK, and MICHAEL SHVARTSMAN | October 20, 2021 | Purchase of 150,000 warrants of DWAC by MICHAEL SHVARTSMAN's friend |
| 8 | GERALD SHVARTSMAN | October 19, 2021 | Purchase of 1,301 shares of DWAC by Outdoor Source Employee-1 |
| 9 | GERALD SHVARTSMAN | October 20, 2021 | Purchase of 100,000 warrants of DWAC by Outdoor Source Employee-2 |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2)

## COUNT TEN
**(Securities Fraud)**

The Grand Jury further charges:

21.     The allegations contained in paragraphs 1 through 14 of this Indictment are

hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

22.     From at least in or about June 2021 through at least in or about November 2021,

in the Southern District of New York and elsewhere, MICHAEL SHVARTSMAN, GERALD

SHVARTSMAN, and BRUCE GARELICK, the defendants, knowingly executed, and attempted

to execute, a scheme and artifice to (a) defraud a person in connection with a security of an

issuer with a class of securities registered under Section 12 of the Securities Exchange Act of

1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of

1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises,

13

money and property in connection with the purchase and sale of a security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit, the defendants executed a scheme to defraud DWAC and Benessere by misappropriating material non-public information for the purpose of executing securities transactions in DWAC.

(Title 18, United States Code, Sections 1348 and 2.)

## FORFEITURE ALLEGATIONS

23.     As a result of committing the offenses alleged in Counts One through Ten of this Indictment, MICHAEL SHVARTSMAN, GERALD SHVARTSMAN, and BRUCE GARELICK, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

24.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> a.     cannot be located upon the exercise of due diligence;
>
> b.     has been transferred or sold to, or deposited with, a third person;
>
> c.     has been placed beyond the jurisdiction of the Court;
>
> d.     has been substantially diminished in value; or
>
> e.     has been commingled with other property which cannot be subdivided without difficulty;

14

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON
4/26/23

DAMIAN WILLIAMS
United States Attorney

15

SDNY_04_00018487

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

                                      :

UNITED STATES OF AMERICA

                                      :

        -v.-

                                        :

ANY AND ALL FUNDS IN ACCOUNT
NUMBER 10511067 IN THE NAME OF EFT       :
BUSINESS SERVICES LLC AT SNB BANK,
N.A. AND ANY AND ALL FUNDS                :
TRACEABLE THERETO,

                                        :

             Defendant-in-rem.

                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

# 23 MAG 7117

**WARRANT OF SEIZURE**
**PURSUANT TO 18 U.S.C. § 981 and 28 U.S.C. § 2461, and**
**18 U.S.C. § 982 and 21 U.S.C. § 853,**

TO:    ANY DESIGNATED OFFICER OF HOMELAND SECURITY
          INVESTIGATIONS, THE FEDERAL BUREAU OF INVESTIGATION,
          AND/OR ANY LAW ENFORCEMENT OFFICER AUTHORIZED BY LAW

       An Affidavit having been made before me by CHRISTOPHER CUTAIA, a Special

Agent with Homeland Security Investigations, that he has reason to believe that the above-

captioned funds and properties are subject to seizure and civil or criminal forfeiture pursuant to

18 U.S.C. §§ 981(a)(1)(A) and 982, and as I am satisfied that there is probable cause to believe

that the property so described is subject to seizure and civil or criminal forfeiture pursuant to 18

U.S.C. §§ 981(a)(1)(A) and 28 U.S.C. § 2461, and 18 U.S.C. § 982 and and 21 U.S.C. § 853(f),

1

and that an order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for criminal forfeiture;

YOU ARE HEREBY COMMANDED AND AUTHORIZED to seize, within fourteen (14) days of the date of issuance of this warrant, by serving a copy of this warrant of seizure upon any person presently in possession of the property described as follows:

ANY AND ALL FUNDS IN ACCOUNT NUMBER 10511067 IN THE NAME OF EFT BUSINESS SERVICES LLC AT SNB BANK, N.A. AND ANY AND ALL FUNDS TRACEABLE THERETO.

YOU ARE FURTHER COMMANDED AND AUTHORIZED to prepare a written inventory of the property seized and promptly return this warrant and inventory before this Court as required by law.

IT IS FURTHER ORDERED THAT the above-listed account shall be frozen upon service of this warrant, in order to prevent the above-captioned funds from being transferred, withdrawn, or removed therefrom, except that transfers into the accounts shall continue to be permitted for a period of 10 days after service of this warrant.

Dated: New York, New York
       November 7th 2023

_____
HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

2