UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

MICHAEL SHVARTSMAN, et al.,

Defendants.

---

S1 23 Cr. 307 (LJL)

**GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO MICHAEL SHVARTSMAN'S PRETRIAL MOTIONS
RELATED TO THE SUPERSEDING INDICTMENT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
26 Federal Plaza
New York, New York 10278

Elizabeth Hanft
Daniel G. Nessim
Matthew R. Shahabian
Assistant United States Attorneys
*Of Counsel*

**PRELIMINARY STATEMENT**

Defendant Michael Shvartsman is charged in Indictment S1 23 Cr. 307 (LJL) (the "Superseding Indictment") with securities fraud and conspiracy to commit securities fraud based on his insider trading in the securities of the special purpose acquisition corporation ("SPAC") Digital World Acquisition Corporation ("DWAC"). In addition to these charges, the Superseding Indictment charges Shvartsman with money laundering crimes based on his use of the proceeds of the insider trading scheme: Count Eleven of the Superseding Indictment charges Shvartsman with participating in a concealment money laundering scheme, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); Count Twelve charges him with engaging in a monetary transaction with criminal funds in excess of $10,000, in violation of 18 U.S.C. §§ 1957 and 2.

Shvartsman now moves to transfer venue of just the money laundering charges—Counts Eleven and Twelve—to the Southern District of Florida, and also moves for a bill of particulars relating to Count Eleven. (Dkt. 91. ("Def. Mot.").)

The motions should be denied. Transferring just the money laundering counts—such that separate trials would be held in the Southern Districts of New York and Florida—would be inefficient and wasteful, and is not warranted under the discretionary factors to be considered by the Court, and no bill of particulars is required given the specificity of the information Shvartsman already has.

**BACKGROUND**

I.     **The Money Laundering Scheme**

As alleged in the Indictment, the defendants together made more than $22 million in illegal profits by trading in securities of DWAC based on insider information that the SPAC was going to take public a media company owned by former U.S. President Donald J. Trump. (Superseding

Indictment ¶ 1.) In total, Michael Shvartsman purchased approximately two million DWAC warrants at the end of September and beginning of October 2021, which he sold after DWAC's planned merger with the media company was announced. Shvartsman made a profit of more than approximately $18 million through this securities fraud scheme. (*Id.* ¶¶ 12(b), 14.) After obtaining these illegal proceeds, from between in or about 2021 through in or about 2023, Shvartsman engaged in a separate scheme to conceal the source, nature, location, and control of his more than $18 million in insider trading profits. As charged in the Superseding Indictment, that scheme had at least two components.

First, in or about December 2021, Michael Shvartsman transferred approximately $8.4 million in proceeds from his sale of DWAC securities through a series of bank accounts that he controlled in an effort to commingle those proceeds and disguise their source. (*Id.* ¶ 15.) These funds were ultimately transferred to a business bank account (the "Washing Account") held at an Oklahoma bank. The Washing Account was in the name of one of the defendant's businesses and was controlled in part by Shvartsman's associate (who was also a tippee in the insider trading scheme). The Washing Account was used as part of Shvartsman's cashless ATM business, through which the account consistently received a high volume of deposits and transmitted a high volume of withdrawals, with regular high cash balances. As a result of these features, the $8.4 million in DWAC proceeds was quickly obscured within the high frequency transactions of the Washing Account.

Second, in or about July 2022, Shvartsman transferred an additional approximately $12 million in proceeds from his sale of DWAC securities to a bank account that Shvartsman controlled. (*Id.* ¶ 16.) In or about September 2022, Shvartsman created a new Delaware corporation, owned by himself and another of his businesses. Shvartsman transferred

approximately $13 million to an account in the name of this new corporation, the bulk of which was constituted of the DWAC proceeds that had been transferred in July. Shvartsman, under the name of an entity he controlled, signed an agreement to purchase the yacht named the Ipanema for approximately $14.7 million.

In approximately the same timeframe, an associate of Shvartsman's ("Associate-1") established two LLCs, one a Delaware company with its principal place of business in Colorado; the other in the Cook Islands. In or about October 2022, Shvartsman assigned the Ipanema's purchase rights to one of Associate-1's newly established entities. On or about October 11, 2022, Shvartsman's company and Associate-1's company executed a promissory note in the amount of $17 million, under which terms, among other things (1) Shvartsman's company agreed to lend Associate-1's company funds to purchase a yacht; (2) Shvartsman's company obtained a security interest and a first priority lien on all of Associate-1's company's assets; and (3) Shvartsman's company retained the right to convert the note into actual ownership of Associate-1's company's assets (for example, the yacht that was contemplated for purchase).

Also, on or about October 11, 2022, Shvartsman transferred approximately $13 million to a law firm IOLTA account, which transferred the funds to Associate-1's company the following day. Associate-1's company thereafter wired approximately $14.1 million to a yacht brokerage firm in order to purchase the Ipanema yacht, then and now docked in Turkey. The Ipanema has since undergone extensive renovation work and has been renamed the Provocateur.

## II. Procedural History

A grand jury sitting in this District returned the initial Indictment against the defendants on June 26, 2023. (Dkt. 1.) The defendants were arrested on June 29, 2023, presented before magistrate judges in the districts of their arrests, and released on bail. On December 22, 2023, the

defendants filed various motions relating to this indictment. On February 8, 2024, The Court held

an evidentiary hearing and heard oral argument, and the motions remain pending.

A grand jury sitting in this district returned the Superseding Indictment on February 6,

2024. On February 29, 2024, Michael Shvartsman filed the instant motions relating to the

Superseding Indictment.

Trial is scheduled to begin on April 29, 2024.

## ARGUMENT

### I. The Defendant's Motion to Transfer Should Be Denied

#### A. Applicable Law

"As a general rule a criminal prosecution should be retained in the original district" where

the case was charged. *United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982); *accord*

*United States v. Kirk Tang Yuk*, 885 F.3d 57, 74 n.5 (2d Cir. 2018). Discretionary transfers of

venue are governed by Federal Rule of Criminal Procedure 21(b), which provides that, "for the

convenience of parties and witnesses, and in the interest of justice, the court upon motion of the

defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof

to another district." Fed. R. Crim. P. 21(b). The "burden is on the moving defendant to justify a

transfer under Rule 21(b)." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y.

1997) (quotation marks omitted). That burden "is not often or easily met," as the defendant must

show that trial in the original district "would be so unduly burdensome that fairness requires the

transfer to another district." *United States v. Larsen*, No. 13 Cr. 688 (JMF), 2014 WL 177411, at

*2 (S.D.N.Y. Jan. 16, 2014); *see also United States v. Calk*, No. 19 Cr. 366 (LGS), 2020 WL

703391, at *2 (S.D.N.Y. Feb. 12, 2020) (same).

In *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964), the Supreme Court introduced a list of factors that courts routinely consider in analyzing a defendant's motion to transfer venue: (1) location of defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district involved; and (10) any other special elements that might affect the transfer. *Spy Factory, Inc.*, 951 F. Supp. at 455 (citing *Platt*, 376 U.S. at 244). "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (quotation marks and brackets omitted).

Generally speaking, "there has been a 'trend in recent years away from granting transfers.'" *United States v. Blondet*, No. 16 Cr. 387 (JMF), 2019 WL 5690711, at *2 (S.D.N.Y. Nov. 4, 2019) (quoting *United States v. Quinn*, 401 F. Supp. 2d 80, 85-86 (D.D.C. 2005) (citing cases and treatises)). This trend recognizes that, since the time that *Platt* was decided in 1964, "the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades" have greatly reduced the circumstances where transfer is justified. *Id.* (quoting *Quinn*, 401 F. Supp. 2d at 86).

B.   Discussion

Application of the relevant *Platt* factors here does not justify deviation from the "general rule" that "a criminal prosecution should be retained in the original district" where the case was charged. *Posner*, 549 F. Supp. at 477. Shvartsman's proposal is fundamentally at odds with the purpose behind Rule 21(b), which is to reduce burdens on the parties, not impose them: Shvartsman is proposing splitting this case into *two* federal trials: one in Manhattan on the insider trading charges; followed by a separate trial in Miami on the money laundering charges. On its face, such a proposal creates no efficiencies and spares no real burdens on any party; to the contrary, it would require offering much of the same evidence and testimony in two trials in separate parts of the country. The motion should be rejected out of hand—there is nothing unfair about requiring Shvartsman to defend himself on the money laundering charges in Manhattan when he will be on trial in Manhattan in any event for the related insider trading charges, even under his proposal.

Moreover, balancing the *Platt* factors, while a trial outside of Shvartsman's district of residence will cause some inconvenience for Shvartsman, as it does for any defendant, this inconvenience will be relatively small for Shvartsman and would be imposed on Shvartsman even under his proposal, and, in any case, this factor standing alone is insufficient to merit a transfer. Transferring the money laundering charges would require relocation of the Government attorneys and agents, as well as many witnesses, victims, and even defense counsel to the Southern District of Florida, imposing significant burdens on all parties. Because all of the *Platt* factors beside the defendant's place of residence are neutral or weigh against transfer, this motion would properly be denied even if Shvartsman were not proposing two separate federal trials.

### 1. Residence of the Defendant

While there is no dispute that Shvartsman does not reside in the Southern District of New York, this fact alone does not justify transfer. It is well established that "the inconvenience of having to stand trial outside of one's home district, without more, is insufficient to warrant a transfer," *United States v. Coriaty*, No. 99 Cr. 1251 (DAB), 2000 WL 1099920, at *2 (S.D.N.Y. Aug. 7, 2000) (internal quotation marks omitted), and a defendant's residence, standing on its own, "has no independent significance in determining whether transfer to [a different] district would be 'in the interest of justice," *United States v. Stein*, 429 F. Supp. 2d 633, 645-46 (S.D.N.Y. 2006) (denying transfer to another district in multi-defendant case where some defendants were from Texas and California). That is because a defendant's desire to be tried in his district of residence is "in tension with the more general presumption that a criminal prosecution should be retained in the original district." *Spy Factory*, 951 F. Supp. at 464.

Shvartsman's motion sets forth no facts that would distinguish this case from the dozens of cases that have come before where a defendant was tried outside of his or her district of residence. Indeed, "[e]very life is significantly disrupted during a trial no matter where it is held. Besides the need to be in court every day, the evenings and weekends are usually consumed analyzing the evidence that has been admitted and preparing for the remainder of trial."' *United States v. Christian*, No. 12 Cr. 41 (KBF), 2012 WL 1134035, at *1 (S.D.N.Y. Apr. 2, 2012) (quoting *United States v. Wilson*, No. 01 Cr. 53 (DLC), 2001 WL 798018, at *1 (S.D.N.Y. July 13, 2001)). The duration of any disruption here—which would occur regardless of where Shvartsman is tried—is not nearly so long as in other cases where motions to transfer have been denied. *See, e.g.*, *Stein*, 429 F. Supp. 2d at 645 (denying a motion to transfer where the trial was anticipated to last between six and eight months).

Moreover, Shvartsman is better positioned to bear any inconvenience than many defendants for whom motions to transfer are denied. *See, e.g.*, *Larsen*, 2014 WL 177411, at *3 (denying transfer where an indigent defendant living in another state would be unable to care for his children or attend his job at a pizzeria during trial); *see also United States v. Avenatti*, No. 19 Cr. 374 (DAB), 2019 WL 4640232, at *3 (S.D.N.Y. Sept. 24, 2019) (concluding that the location of the defendant's residence outside of New York does not weigh heavily in favor of transfer and noting that the defendant "does not claim that he is unable to afford the expenses of defending his case in this District"). Shvartsman is wealthy and has ready access to convenient means of travel. While facing trial away from his home may present some inconvenience to Shvartsman, he does not, and could not credibly, claim that travel to New York City to stand trial represents a significant difficulty for him. In sum, this is not a case where the defendant's interests in a trial near his residence are unusually strong or where the defendant is able to point to an extraordinary circumstance necessitating a trial in his home district; rather, the interests here are, if anything, considerably weaker than those present in cases where transfer has been deemed to be warranted.

  2. *Location of Witnesses*

The location of witnesses who are likely to be called at trial does not weigh in favor of transfer. A defendant claiming that the location of witnesses warrants a transfer of venue bears the burden of "specifically describ[ing] how particular witnesses would be entirely prevented from testifying at trial in the Southern District of New York." *United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *4 (S.D.N.Y. Oct. 9, 2020); *United States v. Milton*, No. 21 Cr. 478 (ER), 2021 WL 5304328, at *6 (S.D.N.Y. Nov. 15, 2021); *see also Spy Factory*, 951 F. Supp. at 456 (defendants seeking to transfer venue bear the burden of offering the Court "specific examples of witnesses' testimony and their inability to testify because of the location of trial"). The "naked

8

allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer." *Spy Factory*, 951 F. Supp. at 456; *see also United States v. Juncal*, No. 97 Cr. 1162 (JFK), 1998 WL 473949, *5 (S.D.N.Y. Aug. 7, 1998) ("there is no basis to grant the motion to transfer" where defendant fails to make "a specific proffer of testimony from specific witnesses to allow the court to make an informed decision about the importance of these witnesses to [the defendant's] case"). Rather, "the court must rely on concrete demonstrations of the proposed testimony." *Spy Factory*, 951 F. Supp. at 456 (quotations and citations omitted). Moreover, "in this age of easy air travel, this factor is generally much less relevant than it was in 1964, when the Supreme Court decided *Platt*." *United States v. Ebbers*, No. 02 Cr. 1144 (BSJ), 2004 WL 2346154, at *1 (S.D.N.Y. Oct. 18, 2004).

The defendant does not even identify the potential witnesses, and he does not describe how they would be inconvenienced by travel, let alone attempt a showing that any witness would be prevented from testifying at a trial in New York City. This is plainly insufficient. *See, e.g.*, *Blakstad*, 2020 WL 5992347, at *4 (witnesses must be entirely prevented from testifying to favor transfer). And Shvartsman is simply wrong when he asserts that "[n]one of the likely witnesses for the money laundering charges are based in New York; they are instead all in or around Miami, Florida." (Def.'s Mot. 5.) Although the Government has not finalized a witness list, it does anticipate calling New York-based witnesses, as well as witnesses based outside of Florida who will have to travel by plane in any event to provide testimony relevant to the money laundering charges against Shvartsman. The Government anticipates calling at least two civilian witnesses for testimony relevant to both the insider trading and money laundering trials, and who would therefore have to testify twice under Shvartsman's proposal in both New York and Florida.

In these circumstances, courts have repeatedly found that this factor does not weigh in favor of transfer. *See, e.g.*, *United States v. Kolfage*, No. 20 Cr. 412 (AT), 2020 WL 7342796, at *3 (S.D.N.Y. Dec. 14, 2020) (proffer that failed to identify witnesses or their testimony and to explain details as to why witnesses could not travel to New York was "insufficiently specific to demonstrate that this factor weighs in favor of transfer"); *Blakstad*, 2020 WL 5992347, at *4 (location of witnesses did not favor transfer where defendant merely asserted that his witnesses were located in California and that travel expenditures would be burdensome); *United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2944626, at *2 (S.D.N.Y. July 31, 2008) ("bare assertion" of hardship was insufficient to tip this factor in favor of transfer); *Stein*, 429 F. Supp. 2d at 645-46 (location of the witnesses did not support transfer where defendants failed to put forward any evidence that potential defense witnesses would be unable or unwilling to travel to the Southern District of New York); *Ebbers*, 2004 WL 2346154, at *1 (defendant did not allege that "witnesses would be unable to testify in New York, that he would be unable to call them, or that he would be financially incapable of paying such witness' expenses"). Shvartsman has failed to meet his burden to demonstrate that this factor favors transfer.

### 3. *Location of Events*

The location of the charged events—in which Shvartsman utilized financial institutions, corporate forms, and associates located in numerous states and abroad to launder funds—does not favor transfer. Although it is true that Shvartsman took part in much of this money laundering conduct while at his home or office in Florida, the scheme involved individuals, entities, and property located in numerous states and countries, which counsels against transfer. *See, e.g.*, *Kolfage*, 2020 WL 7342796, at *4 (transfer not favored by location of events even where the defendants never entered New York because the fraud "was national in scale" as it "was carried

out throughout the country over the internet"); *Blakstad*, 2020 WL 5992347, at *4 ("'Because the criminal activity that was alleged to have occurred in this case was concededly national in scope, the location of the events at issue favors neither side.'" (quoting *Spy Factory*, 951 F. Supp. at 457)); *United States v. Estrada*, 880 F. Supp. 2d 478, 483 (S.D.N.Y. 2012) (noting that "[t]he majority of 'the events likely to be at issue' are alleged to have occurred in Los Angeles," but concluding that "this factor is not particularly persuasive when defendants are alleged to have intentionally projected their fraud nationwide, including into this District"); *Ebbers*, 2004 WL 2346154, at *1 (finding third *Platt* factor did not weigh in favor of transfer when securities fraud involved national company listed on Nasdaq and Government's case involved conversations with New York entities); *Spy Factory*, 951 F. Supp. at 457 (though the defendant's company was in Texas, his illegal sales were national in scope, making New York an equally appropriate venue). Indeed, the yacht itself has been and continues to be located in Turkey.

Accordingly, while the trial in this case will undoubtedly relate to some events that took place outside the Southern District of New York, that would be an inevitability in any district in which this case was tried. Moreover, while this case of course concerns Shvartsman's money laundering, it is far from obvious that the "nerve center" of the case is in Florida. The focus of the money laundering counts is on a national and international scheme to conceal the proceeds of criminal activity. These actions involved the Southern District of New York. This factor, therefore, weighs against transfer or, at a minimum, is neutral.

### 4. *Location of Documents and Physical Evidence*

The fourth *Platt* factor, the location of documents, does not weigh in favor in transfer, particularly when modern developments in electronics and computing render documents readily available to a defendant wherever he or she is located. *See United States v. Datta*, 797 F. Supp. 2d

448, 450 (S.D.N.Y. 2011) (finding that electronic format of documents "neutraliz[ed] any issue concerning the location of documents"); *Brooks*, 2008 WL 2944626, at *2 ("the location of documents and records is not a major concern in these days of easy and rapid transportation"). In fact, evidence relied upon by the Government in charging the case was gathered and is maintained in Manhattan, and as a result, transfer of venue would require the Government to transport documents, hard drives containing evidence, and other materials to Florida. *See United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990) (presence of documents and recordings in this District favored retaining venue); *United States v. Keuylian*, 602 F.2d 1033, 1038 (2d Cir. 1979) (presence of most of the exhibits in the charging district favored retaining venue).

In short, the location of the actual evidence in this case does not favor transfer.

### 5.  *Disruption of the Defendant's Business*

Shvartsman asserts that a trial in New York on the money laundering charges will result in witness travel that will "create unnecessary business disruption." (Def. Mot. 5.) But this is insufficient. *See, e.g.*, *Blakstad*, 2020 WL 5992347, at *5 (bare assertions that travel across the United States will cause substantial disruption is insufficient for factor to favor transfer). In any case, as noted above, "[e]very life is significantly disrupted during a trial wherever it is held." *Christian*, 2012 WL 1134035, at *1. And Shvartsman's proposal does not seriously obviate any disruption on him—he will be attending trial in New York on the insider trading counts, even if were to succeed on his motion.

### 6.  *Expense to the Parties*

The expense to the parties also weighs against transfer. Shvartsman does not assert that he is unable to bear the costs of his defense, and he only conclusorily refers to the "expense associated with transporting and housing witnesses." (Def. Mot 6.) However, Shvartsman entirely ignores the

substantial cost that the Government would bear in relocating the trial and investigative team to Florida. The Government's resources are not unlimited, and unnecessary expenses incurred by the Government are ultimately paid for by taxpayers. Notwithstanding that the Government has worked with law enforcement officers based in Southern Florida in the investigation and prosecution of this case, transferring this case to Florida would require a large New York based investigative and prosecutorial team—including three Assistant U.S. Attorneys, at least one paralegal, and several federal law enforcement agents—to relocate for weeks, and would require the transportation of large amounts of data and physical evidence to another district. Courts in this District have repeatedly denied transfer motions in part because the expense of transfer to the Government was too significant to warrant transfer. *See, e.g., Avenatti*, 2019 WL 4640232, at *5 (denying transfer because "the entire prosecution team—including several Assistant United States Attorneys, paralegals, and multiple law enforcement agents—would be forced to relocate to California for the duration of the trial"); *United States v. Canale*, No. 14 Cr. 713 (KBF), 2015 WL 3767147, at *4 (S.D.N.Y. June 17, 2015) (denying transfer where it "would require the Government to transport and house two prosecutors, as well as a paralegal and several case agents"); *Ebbers*, 2004 WL 2346154, at *2 ("It would impose an enormous burden on the government to move the prosecutors, investigators, support staff, court staff, and others familiar with the case … to another jurisdiction").

"Where the effect of a motion to transfer is merely to shift the economic burden to the government, this factor generally weighs against transfer." *Kolfage*, 2020 WL 7342796, at *5 (internal quotation marks and citation omitted). And where the "[d]efendant has not shown that the additional expense is unduly onerous in light of his circumstances, nor that he would be unable

to bear such expense" this factor does not favor transfer. *Calk*, 2020 WL 703391, at *4. For these reasons, the expense to the parties factor weighs against transfer.

       7.  *Location of Counsel*

The location of counsel weighs against transfer. Shvartsman ignores this factor, but his primary criminal defense attorney in this case, who has argued the first round of motions on his behalf and who has filed the instant motion, is based in New York City. Furthermore, this factor is not limited to the location of defense counsel. As the Second Circuit has made clear, the location of the prosecution team is an appropriate consideration in denying a motion to transfer venue. *Stephenson*, 895 F.2d at 875 (considering "location of the prosecutor"); *Keuylian*, 602 F.2d at 1038 (considering location of "the Government attorney and the ATF case agent"); *see also Blakstad*, 2020 WL 5992347, at *5 (observing that more of the attorneys in the case, when the prosecutors are included, are based in New York); *Kolfage*, 2020 WL 7342796, at *5 (considering location of both defense and Government lawyers). Here, as detailed above, the location of the prosecution team, which consists of three Assistant U.S. Attorneys, paralegals, and multiple case agents, weighs against transfer—as does the location of defense counsel.

### 8.   *Relative Accessibility of the Place of Trial*

The relative accessibility of the districts at issue does not favor a transfer. It is not reasonably subject to dispute that Manhattan is one of the most accessible locations in the United States. *See Avenatti*, 2020 WL 5992347, at *5 ("Manhattan is clearly one of the most accessible locations in the United States with three major airports and a variety of other public transportation."); *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *17 (Dec. 11, 2017) (denying transfer because, *inter alia*, "New York City is clearly an accessible transportation hub"); *Christian*, 2012 WL 1134035, at *2 (denying transfer because, *inter alia*, "New York is easily accessible by air with three major airports, as well as a variety of other public transportation"). Accordingly, to the extent that any witnesses are required to travel from outside of New York to testify, the inconvenience will be minimal.

### 9.   *Docket Conditions*

Shvartsman concedes that docket conditions is a neutral factor in this case "as both the Southern District of New York and the Southern District of Florida are equally equipped to handle a trial of the counts in question." (Def. Mot. 6 n.3.)

### 10.   *Other Factors*

Shvartsman further argues that the time required to prepare for trial on the money laundering counts support severance and transferring those counts to the Southern District of Florida. (Def. Mot. 4, 7.) But this disregard for judicial resources should be rejected.

The Court has already granted Shvartsman a two-week adjournment in light of the return of the money laundering counts. And, to the extent Shvartsman has a credible basis to seek a further adjournment of trial, he may do so. But the remedy to needing an adjournment is seeking an adjournment, not a severance, which would require two trials. Such a situation would result in

hardship to the Government, would needlessly burden a second court with conducting trial, and is almost certain to result in requiring witnesses to testify multiple times.

This additional reason proffered by Shvartsman also fails to support transfer.

\* \* \*

In sum, the circumstances here strongly favor denial of the motion to transfer the case. Even in cases where some of the *Platt* factors "favor or perhaps favor transfer," *Datta*, 797 F. Supp. 2d at 450, courts nonetheless deny such motions where defendants do not meet their burden of overcoming the presumption that a trial shall be held in the initial district, *see, e.g.*, *id.* (denying motion to transfer even while noting "[i]t appears that more of the events pertinent to the indictment occurred in Texas than here, defendant's business is centered there, and the defendant's family now resides in Texas" and that "it may be that more trial witnesses ultimately will prove to be Texas rather than New York area residents"); *United States v. Pastore*, No. 17 Cr. 343 (NSR), 2018 WL 395490, at \*5 (S.D.N.Y. Jan. 11, 2018) (denying transfer where two of the *Platt* factors—residence of defendant and location of counsel—favored transfer and the others were neutral or militated against transfer); *Percoco*, 2017 WL 6314146, at \*18 (denying transfer despite location of defendants, a number of witnesses, and a number of relevant events in other district); *Larsen*, 2014 WL 177411, at \*3 (denying transfer despite indigent defendant's residence, job and child care responsibilities supporting motion where other factors were opposed or neutral).

Here, the only factor that favors transfer—and only minimally so—is the location of the defendant. Even that factor is of only doubtful help to the defendant, inasmuch as he will be in New York for his insider trading trial in any event. All other factors are either neutral or counsel in favor of trial in this Court. The motion to transfer should therefore be denied. *Blakstad*, 2020 WL 5992347, at \*6 (denying transfer because "the only factor counseling in favor of transfer in

this case is Blakstad's residence in San Diego, while all other factors are either neutral or weigh slightly in the Government's favor").

## II.  The Court Should Deny Shvartsman's Motion for a Bill of Particulars

The defendants seek to compel the Government to produce a bill of particulars specifying the acts of concealment the Government intends to prove at trial. (Def. Mot. 9.) This motion should be denied as "an impermissible attempt to compel the Government to provide the evidentiary details of its case." *United States v. Rittweger*, 259 F. Supp. 2d 275, 292-93 (S.D.N.Y. 2003).

A bill of particulars is required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). That is not the case here. The speaking Indictment, as supplemented by the searchable Rule 16 discovery and additional voluntary disclosures made by the Government, provides Shvartsman with more than enough notice. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (court should consider the text of the Indictment, as well as discovery and other information supplied to the defendant).

Here, the speaking indictment specifically identifies two tranches of insider trading proceeds that were laundered—first, a set of funds that were laundered through the Washing Account, and, second, a set of funds that were laundered through purchasing the yacht. (Superseding Indictment ¶¶ 15-16.) These allegations, as well as additional discovery, including two seizure warrant affidavits outlining the grounds for seizure of certain property involved in money laundering (relating to both the Washing Account and the yacht) provides the defendant ample notice of the charges against him and what he must defend.

While more information than has been described explicitly in the Indictment might be considered "helpful," the "ultimate test must be whether the information sought is necessary,"

*Mitlof*, 165 F. Supp. 2d at 569, and the allegations in the Indictment are more than sufficient to advise the defendants of the nature of the charged scheme, *see United States v. D'Amico*, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) ("'A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial.'"); *United States v. Bellomo*, 263 F. Supp. 2d 561, 580 (E.D.N.Y. 2003) ("A bill of particulars is not designed to . . . restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory."). There are good reasons why bills of particulars are warranted only where the allegations in an indictment, as supplemented by discovery and otherwise, are so general as to render it impossible to prepare a defense. Because a bill of particulars "confines the Government's proof to particulars furnished," it can "restrict unduly the Government's ability to present its case." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987). "The [G]overnment's presentation of evidence at trial is limited to the particulars contained in the bill, so care must be taken not to overly restrict the government's proof while still protecting the defendant from unfair surprise." *United States v. Mahabub*, No. 13 Cr. 908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014); *see also United States v. Samsonov*, No. 07 Cr. 1198 (CM), 2009 WL 176721, at *3 (S.D.N.Y. Jan 23, 2009) (bill of particulars "must not be misused . . . to foreclose the Government from using proof it may develop as the trial approaches").

## CONCLUSION

For the reasons set forth above, the defendant's motions should be denied.

Dated:  New York, New York
        March 14, 2024

                                    Respectfully submitted,

                                    DAMIAN WILLIAMS
                                    United States Attorney


                        By:     /s/_____
                                    Elizabeth Hanft
                                    Daniel G. Nessim
                                    Matthew R. Shahabian
                                    Assistant United States Attorneys
                                    Tel.: 212-637-2334 / -2486 / -1046

19