

7 World Trade Center, 34th Fl
250 Greenwich Street
New York, NY 10007
(212) 301-7632
tai@taiparklaw.com

March 15, 2024

**Via ECF**

Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street, Room 15C
New York, New York 10007

      Re: *United States v. Michael Shvartsman et. al,* No. 23 Cr. 307 (LJL)

Dear Judge Liman:

      On behalf of Defendant Michael Shvartsman in the above-referenced case, we write to respectfully advise the Court of information that we learned recently and that we believe is relevant to Mr. Shvartsman's pending motion to suppress certain statements and recorded conversations, pursuant to ethical no-contact rule as well as the Sixth Amendment. (Dkt No. 56). These were statements a government informant who posed as an asset trustee ("Trustee Informant") covertly obtained during calls and meetings with Mr. Shvartsman before and after his indictment on the instant charges. We now believe the government employed another informant to record calls even before the Trustee Informant.

      **Information About Another Informant Who Was a Lawyer**

      The new information is comprised of additional covert recordings that were recently produced to the defense by the government's Filter Team. Those recordings demonstrate that another informant (not the Trustee Informant) was injected into the defense camp as early as November of 2022. This informant presented himself as a lawyer who could provide trust advisory services ("Lawyer Informant"). It was he who introduced the Trustee Informant to Mr. Shvartsman and his in-house counsel.

      As the Court is aware, the lengthiest recording that is the subject of the motion to suppress was of a meeting at Mr. Shvartsman's office on March 15, 2023. *See* Shvartsman Reply Brief (Dkt. No. 70) at 16-19. During this meeting, the Trustee Informant was accompanied by a person who presented himself as a lawyer and who largely drove the discussion. At the time of the motion, it was unknown to the defense whether this person was also cooperating with the government, and thus we referred to him simply as "the Broker." *Id*. at 16. The government never disclosed to the defense or to the Court this person's status, before or at the oral argument on the motion on February 8, 2024. It was not until we listened to the recordings produced by the government Filter Team that we discovered this person was in fact an informant and that he had been recording discussions with Mr. Shvartsman as early as November 9, 2022.

This recording is of a Zoom call and it is made by the Lawyer Informant. He begins with his introductory comments for the record, before the other participants join the call:

> "This is [Lawyer Informant]; today is Wednesday, November 9, 2022. The time right now is 10:59 AM US Eastern time I'm about to jump on a Zoom conference call with Michael Shvartsman and two of his attorneys, Mike Park and Michael Rosenblum. And the Zoom account is ███████████████, and I am hosting the meeting. I'm about to start the meeting."

The meeting then begins with three other men who join: Mr. Shvartsman, his regular trusts and estates outside counsel, and his in-house counsel (referred to in the motion to suppress as GC-1 (Dkt. No. 70) Reply Br. at 16). The Lawyer Informant discusses his credentials and capabilities and his knowledge of asset protection laws. Mr. Shvartsman's trusts and estates lawyer opens the discussion to Mr. Shvartsman but first confirms that they are all lawyers and are having a confidential meeting with Mr. Shvartsman.[1]

It was this Informant Lawyer who introduced Mr. Shvartsman and GC-1 to the Trustee Informant. The March 15, 2023, recorded meeting was the first in-person meeting among the Informant Lawyer, the Informant Trustee, Mr. Shvartsman and GC-1. We will not repeat the substance of that meeting as a transcript of it was previously submitted as Exhibit BB in support of Mr. Shvartsman's motion and discussed at length therein. (*See* Dkt. No. 71-2.)[2]

**The New Information Further Supports Motion to Suppress**

There are several implications of this newly produced information. First, the injection of an informant into the camp of a represented person began earlier than previously understood. Second, this informant was a lawyer who presented himself as representing Mr. Shvartsman's interest. During oral argument, Mr. Shvartsman cited to *United States v. Sabri*, 573 F. Supp. 134 (W.D.N.Y. 1996), as one instance of a court finding egregious government misconduct in employing a defendant's attorney (on other civil matters) as the government's informant. Statements were suppressed and one related count dismissed. We argued that the government's use of the Trustee Informant presented an analogous case. Had we known that the Informant Lawyer was then acting as an informant, we would obviously have argued that the *Sabri* case is virtually indistinguishable. We submit now that these facts demonstrate egregious violation of the ethical rules and require suppression for all the reasons previously submitted.

There is yet a third implication, and that is that the government fully understood that the Lawyer Informant's conduct triggered attorney-client privilege concerns. That is why his communications with Mr. Shvartsman were walled off from the prosecuting team. Yet, for reasons that are unclear, the prosecuting team had full access to, and presumably made use of, subsequent recorded calls and meetings where the Informant Lawyer and the Informant Trustee together sought

---

[1] Because the defense maintains that all these discussions were privileged, we do not attach a copy of this recording or the other materials recently produced by the Filter Team and will not do so until the Court provides direction on how any of this may be shared without risking a claim of waiver.

[2] There is some remote chance that, notwithstanding his covert activities, the Informant Lawyer may not have been acting as an informant at the relevant time. Earlier this evening, we emailed the three prosecutors in charge of this case to request that they immediately advise whether this person was acting at the direction of the government so that we could accurately represent the government's position. As of this filing, we have received no response from the government.

to extract information from Mr. Shvartsman and his in-house attorney. There is literally no distinction between the calls the government deemed potentially privileged and those the prosecuting team has had access to.

The government's casual treatment of its obligations regarding Mr. Shvartsman's privileged communications as they relate to the Informant Lawyer is demonstrated by another discovery. One of the documents produced by the Filter Team is a detailed email communication dated January 11, 2023, from the Informant Lawyer to the Informant Trustee discussing, *inter alia*, information he learned from Mr. Shvartsman and/or Mr. Shvartsman's in-house counsel. Yet this exact document, which the prosecuting team was supposed to be walled off from, was produced by the prosecuting team to the defense in the regular course of their discovery obligations.

These newly discovered facts further support Mr. Shvartsman's motion to suppress or for a fact hearing. The Court should not countenance such cavalier disregard for the rights of criminal defendants or the ethical obligations of government attorneys.

Respectfully submitted,

Tai H. Park

cc: All Counsel of Record