UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA,                                         :
                                                                  :
                                                                  :
          -v-                                                     :          23-cr-307 (LJL)
                                                                  :
MICHAEL SHVARTSMAN, GERALD                                        :         MEMORANDUM AND
SHVARTSMAN, and BRUCE GARELICK,                                   :              ORDER
                                                                  :
                    Defendants.                                   :
                                                                  :
------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/25/2024
```

LEWIS J. LIMAN, United States District Judge:

     Defendant Michael Shvartsman ("M. Shvartsman") moves, pursuant to Federal Rule of

Criminal Procedure 21(b), to transfer the money laundering counts and the forfeiture charges of

the Superseding Indictment to the United States District Court for the Southern District of

Florida and for a bill of particulars in connection with Count Eleven of the Superseding

Indictment.  Dkt. No. 91.  For the following reasons, the motions are denied.

## BACKGROUND

     The Court assumes familiarity with its prior Opinion and Order in this case describing the

allegations of the Superseding Indictment, Dkt. No. 102, and summarizes only those facts

pertinent to the instant motions.

     On June 26, 2023, a grand jury returned a ten-count indictment (the "Indictment") against

M. Shvartsman and his co-Defendants Gerald Shvartsman ("G. Shvartsman") and Bruce

Garelick ("Garelick").  Dkt. No. 1.  The Indictment charged all three Defendants in Count One

with conspiracy to commit securities fraud in violation of Title 18 of the U.S. Code, Section 371.

Id. ¶¶ 15–18.  Counts Two through Nine charged Defendants with substantive counts of

securities fraud in violation of Title 15 of the U.S. Code, Sections 78j(b) and 78ff, and Title 17 of the Code of Federal Regulations, Section 240.1b-5, in connection with purchases of the securities of Digital World Acquisition Corp. ("DWAC").  *Id.* ¶¶ 19–20.  M. Shvartsman was charged in Counts Three through Seven of the Indictment.  *Id.*  Finally, Count Ten charged all three Defendants with securities fraud in violation of Title 18 of the U.S. Code, Section 1348.  *Id.* ¶¶ 21–22.  The Indictment also sought forfeiture of any proceeds of the charged offenses or substitute assets for such proceeds.  *Id.* ¶¶ 23–24.  In broad brush, the Indictment charged all three Defendants with participating in a conspiracy to trade on confidential material non-public information ("MNPI") regarding DWAC's plans to engage in a business transaction with the Trump Media and Technology Group ("Trump Media"), a media company founded by former President Donald J. Trump.  *Id.* ¶¶ 2, 8.  The Indictment charges that, in violation of confidentiality agreements each Defendant had signed and duties Garelick had assumed as a director of DWAC, Defendants used MNPI about the company's likely merger with Trump Media to make well-timed purchases of DWAC securities on the open market in September and October 2021.  *Id.* ¶¶ 11–12.

On February 6, 2024, the grand jury returned a Superseding Indictment, Dkt. No. 81, that in addition to the original charges, added two money laundering counts against M. Shvartsman. Count Eleven charges M. Shvartsman with engaging in financial transactions with the proceeds of specified unlawful activity with the intent to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity, in violation of Title 18 of the U.S. Code, Section 1956(a)(1)(B)(i).  *Id.* ¶¶ 25–26.  Count Twelve charges M. Shvartsman with knowingly engaging or attempting to engage in monetary transactions in criminally derived property which was derived from specified unlawful activity, in violation of Title 18 of the U.S.

Code, Sections 1957 and 2. *Id.* ¶¶ 27–28.  The proceeds that M. Shvartsman is alleged to have laundered are those he earned as a result of the securities fraud counts charged in the Indictment, i.e., the sale of DWAC securities. *Id.* ¶¶ 15–16.  The money laundering counts are based on two sets of transactions M. Shvartsman is alleged to have executed with those proceeds in order to conceal that the funds involved were the proceeds of unlawful activity: a December 2021 transfer of $8.4 million in proceeds through a series of bank accounts to an account in the name of one of M. Shvartsman's business associates, and a July 2022 purchase of a luxury yacht with approximately $12 million in DWAC proceeds. *Id.*

Defendants were arraigned on the Indictment on July 20, 2023, July 20, 2023 Minute Entry, and on the Superseding Indictment on February 8, 2024, Feb. 8, 2024 Minute Entry.

## DISCUSSION

### I.    M. Shvartsman's Motion for Transfer of Venue

M. Shvartsman argues that the Court should transfer Counts Eleven and Twelve of the Superseding Indictment to the District Court for the Southern District of Florida in the interests of justice on the basis that most, if not all, of the alleged acts giving rise to the money laundering charges arose in Florida, the likely witnesses reside in or around Miami, and M. Shvartsman resides in Miami, where the relevant documentary evidence also is located.  Dkt. No. 92.  He argues that trial should go forward on the securities fraud counts in New York and then, and only if he is convicted on those charges, should trial go forward on the money laundering charges in Florida. *Id.* at 4.

The Government disputes virtually all of these points.  It argues that M. Shvartsman and his business will not be appreciably more inconvenienced by having the money laundering charges tried in this Court than he already is by having the securities fraud charges tried here and that any inconvenience is the ordinary one incident to any criminal trial and not a basis for the

transfer for venue, Dkt. No. 96 at 6; that the Government anticipates calling New York-based witnesses as well as witnesses from outside of Florida, *id.* at 9; that M. Shvartsman's money laundering scheme involved individuals, entities and property located in numerous states and countries, *id.* at 10; that the transfer of venue would require the Government to transfer all of its evidence to Florida and, in any event, the location of evidence in this case does not justify a transfer, *id.* at 12; that the effect of a transfer would be merely to shift economic burdens onto the Government and court system without appreciably reducing them for the defense, *id.* at 15–16; and that none of the other factors justify transfer, *id.*

M. Shvartsman's motion is made against the backdrop of two significant principles of criminal procedure. First, it has been the general rule for decades that "a criminal prosecution should be retained in the original district." *United States v. U.S. Steel Corp.*, 233 F. Supp. 154, 157 (S.D.N.Y. 1964) (Weinfeld, J.); *see also United States v. Kirk Tang Yuk*, 885 F.3d 57, 74 n.5 (2d Cir. 2018); *United States v. Christian*, 2012 WL 1134035, at *1 (S.D.N.Y. Apr. 2, 2012); *United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982) (Sand, J.).

Second, it also has been the rule for decades that when two or more counts are properly charged together, all else being equal, they should be tried together. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Liburd*, 2019 WL 319392, at *5 (E.D.N.Y. Jan. 24, 2019); *United States v. Figueroa*, 56 F. Supp. 2d 1222, 1224 (D. Utah 1999) ("[O]ffenses charged together should normally be tried together."). M. Shvartsman does not dispute that Counts Eleven and Twelve (the money laundering counts) were properly joined with the securities fraud counts, nor does he argue that the counts should be severed. Under Federal Rule of Criminal Procedure 8(a), a defendant may be charged in a single indictment "with 2 or more offenses if the offenses charged . . . are based on the same act or transaction, or are connected

with or constitute parts of a common scheme or plan."  Fed. R. Crim. P. 8(a).  Under Federal

Rule of Criminal Procedure Rule 14(a), where two or more counts are joined in a single

indictment or are consolidated for trial, the Court may sever the charges and order separate trials

only when the consolidation "appears to prejudice a defendant or the government."  Fed. R.

Crim. P. 14(a).  M. Shvartsman does not deny, nor could he, that the money laundering counts

are "based 'on two or more acts or transactions connected together or constituting parts of a

common scheme or plan.'"  *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990) (quoting

Fed. R. Crim. P. 8(a)).  The money laundering charges arise directly out of the scheme to commit

securities fraud; without the securities fraud, there would be no charges for money laundering.

He does not claim prejudice from the joinder of those claims—the evidence that would be

admissible on the money laundering counts would be admissible in a trial on the securities fraud

counts and vice versa.  It is in the interests of justice that the counts be tried together.

"Consolidating offenses that arise from the same or related acts saves resources, allows the jury

to see the complete set of facts concerning the alleged criminal course of conduct, and may even

work to the defendant's advantage by preventing the government from using multiple trials to

see and react to the defense strategy."  1A C. Wright & A. Miller, Federal Practice and

Procedure Crim. § 144 Joinder of Offenses (5th ed. 2023); *see also Zafiro*, 506 U.S. at 540

("Rules 8(b) and 14 are designed 'to promote economy and efficiency and to avoid a multiplicity

of trials, [so long as] these objectives can be achieved without substantial prejudice to the right

of the defendants to a fair trial.'" (alteration in original) (quoting *Bruton v. United States*, 391

U.S. 123, 131 n.6 (1968))).

      Federal Rule of Criminal Procedure 21(b) gives the Court discretion to transfer one or

more counts of an indictment in the interests of justice.  It provides: "Upon the defendant's

motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). If, as is the case here, the defendant was indicted in the Southern District of New York and venue properly lies in the Southern District of New York, then the Government need not prove that it is in the interests of justice for the case to remain in the Southern District of New York. Rather, "the burden is on the moving defendant to justify a transfer under Rule 21(b)." *United States v. Aronoff*, 463 F. Supp. 454, 460 (S.D.N.Y. 1978); *see United States v. Beeman*, 2003 WL 22047871, at *4 (S.D.N.Y. Aug. 29, 2003).

In deciding whether to transfer all or part of a case, courts routinely consider the ten factors set forth in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964). *See United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990); *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 455 (S.D.N.Y. 1997) (Sotomayor, J.). Those factors are:

> (1) The location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be at issue; (4) the location of relevant documents; (5) the potential for disruption of the defendant's business if transfer is denied; (6) expenses to be incurred by the parties if transfer is denied; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) docket conditions in each district; and (10) any other special circumstances that might bear on the desirability of transfer.

*Platt*, 376 U.S. at 243–44. "No one of these considerations is dispositive." *Maldonado-Rivera*, 922 F.2d at 966. Instead, Rule 21(b) requires the Court "to strike a balance among numerous non-dispositive and non-exclusive factors." *Kirk Tang Yuk*, 885 F.3d at 74 n.5.

M. Shvartsman has not satisfied his burden to show that a transfer is necessary for the convenience of the parties or the witnesses or would be in the interest of justice. To the contrary, it would multiply proceedings and costs for the parties, witnesses, and court

system, would be contrary to the interests of justice, and would be inconsistent with the objectives that Rule 8 seeks to promote.

Starting with factors one and five, M. Shvartsman is a resident of Florida and trial on the money laundering counts, just like the trial on the securities fraud counts, will inconvenience M. Shvartsman and take him away from his business associates in Florida. Those factors cut in favor of transfer, but only slightly.  "[E]very litigation, particularly a criminal prosecution, imposes burdens upon a defendant and bring in its wake dislocation from normal occupational and personal activities," and "mere inconvenience, interference with one's routine occupational and personal activities, and other incidental burdens which normally follow when one is called upon to resist a serious charge do not ipso factor make the necessary showing that a transfer is required in the interests of justice." *U.S. Steel Corp.*, 233 F. Supp. at 157; *see also Christian*, 2012 WL 1134035, at *1; *United States v. Wilson*, 2001 WL 798018, at *3 (S.D.N.Y. July 13, 2001).  There is no constitutional right to be tried in one's district of residence.  *See Platt*, 376 U.S. at 245; *Aronoff*, 463 F. Supp. at 457.

Here, M. Shvartsman will already have to sit for trial in New York.  He does not object to that, or seek to have the securities fraud counts transferred.  As things stand, he will no doubt have to spend time in New York preparing for trial on those counts and attending the trial.  There is no reason to believe that the trial on the money laundering counts will add appreciably to the personal burden on him or on his family and business. M. Shvartsman "does not claim that he is unable to afford the expenses of defending his case in this District," particularly when he is defending himself against other allegations in this District.  *United States v. Avenatti*, 2019 WL 4640232, at *3 (S.D.N.Y. Sept. 24,

2019).  According to the Superseding Indictment, he is a sophisticated businessman, who

owns a venture capital firm, and who was able to invest hundreds of thousand of dollars

in DWAC and purchase millions of DWAC warrants, and profited to the tune of $18.2

million from his transactions in DWAC securities.  Dkt. No. 81  ¶¶ 2, 7 9, 12b, 14.  Trial

in New York will impose a lesser burden on him than it does on many defendants who

appear for trial in this District.

   The location of possible witnesses (factor two) and the location of relevant events

(factor three) also do not justify transfer.  M. Shvartsman asserts that "many" of his

witnesses will be employees of his businesses "and are located in Miami."  Dkt. No. 92 at

5.  His counsel makes conclusory assertions that the individuals who kept the books and

records for the bank account controlled by M. Shvartsman's business associate and for

the account used to purchase the yacht alleged in the Superseding Indictment and who

"were part of the transactions in question," reside in the Southern District of Florida, and

that the individuals who could testify about those transactions are all located in that

District.  Dkt. No. 93 ¶¶ 5, 7–8.  But he does not identify the witnesses, indicate how

many they are, or even represent that he intends to call them to testify at trial.  Nor does

M. Shvartsman identify why any of the employees of his venture capital firm or who

work for him would have any challenge in coming to New York from Miami to testify.

"New York is easily accessible by air with three major airports, as well as by a variety of

other public transportation."  *Christian*, 2012 WL 1134035, at *2.  "[A] naked allegation

that witnesses will be inconvenienced by trial in a distant forum will not suffice for

transfer."  *United States v. Larsen*, 2014 WL 177411, at *4 (S.D.N.Y. Jan. 16, 2014)

(quoting *United States v. Valdes*, 2006 WL 738403, at *5 (S.D.N.Y. Mar. 21, 2006)); *see*

*United States v. Brooks*, 2008 WL 2944626, at *2 (S.D.N.Y. July 31, 2008) ("[Defendant's] bare assertion is insufficient to tip this *Platt* factor in his favor."); *Spy Factory*, 951 F. Supp. at 456.  And M. Shvartman "do[es] not put forward any evidence that potential witnesses would be unwilling and unable to travel to the Southern District of New York." *Christian*, 2012 WL 1134035, at *2.  The Government counters that it anticipates calling New York-based witnesses and witnesses from outside of Florida. Dkt. No. 96 at 10.  Transfer of the money laundering counts alone would require at least two of the Government's civilian witnesses to testify twice—in both New York and Florida.  This factor cuts against transfer.  Moreover, although it appears that most of the meetings regarding the transfers that are alleged to be money laundering took place in Florida, the scheme itself was national, *see id.* at 2–3, and it involved specified unlawful activity that took place in New York.  This is not one of the rare cases in which the "nerve center" is so centralized in Florida as to justify transfer.  *See United States v. Alter*, 81 F.R.D. 524, 526 (S.D.N.Y. 1979) (Weinfeld, J.).

The remainder of the factors either are neutral or cut against transfer.  "[T]he location of documents and records is not a major concern in these days of easy and rapid transportation."  *Brooks*, 2008 WL 2944626, at *2 (quoting *Posner*, 549 F. Supp. at 478); *Avenatti*, 2019 WL 4640232, at *4 ("Modern developments in electronics and computers render documents readily available to a defendant wherever he is located."); *Christian*, 2012 WL 1134035, at *2 ("The 'massive expansion of technology' is one of the reasons that motions to transfer have become disfavored in recent years." (quoting *United States v. Quinn*, 401 F. Supp. 2d 80, 86 (D.D.C. 2005))).  The mere fact that the Government collected documents in New York would not defeat transfer if transfer were supported on

other grounds.  Likewise, the fact that many of the documents were originally located outside of New York does not warrant transfer here.  This factor is neutral.

M. Shvartsman makes no argument regarding the expenses to be incurred by the parties if transfer is denied, the location of counsel, or the relative accessibility of the place of trial.  Those factors all disfavor transfer.  Both the prosecutors and defense counsel are all located here.  *See Avenatti*, 2019 WL 4640232, at \*5; *Christian*, 2012 WL 1134035, at \*2 ("The need to move the prosecution team . . . as well as both of defendants' respective attorneys who are located in New York make transfer inexpedient, inefficient, and costly").  This Court will empanel a jury to hear the bulk of the case—the securities fraud counts.  A separate trial in Florida on the money laundering counts alone will only increase expenses, for all involved.  *See United States v. Stein*, 429 F. Supp. 2d 633, 646 (S.D.N.Y. 2006).  And, as stated above, New York is eminently accessible.

Finally, the docket conditions in each district and special circumstances all argue against transfer.  While M. Shvartsman argues that docket conditions are neutral because both this Court and the Southern District of Florida are equally equipped to handle a trial of the money laundering charges, Dkt. No. 92 at 6 n.3, this factor requires consideration of more than the size of the respective dockets or a comparison of the Court's relative expertise.  It also is relevant whether the docket reflects investment by one court or the other in the particular case.  *See Brooks*, 2008 WL 2944626, at \*3.  This Court already has invested substantial resources in this case.  *See United States v. Estrada*, 880 F. Supp. 2d 478, 485 (S.D.N.Y. 2012) ("[T]his Court has familiarity with the case."); *United States v. Flom*, 2015 WL 6506628, at \*8 (E.D.N.Y. Oct. 27, 2015).  "Even assuming that the docket conditions of the [Southern District of Florida are] favorable to holding trial

there, 'a transfer . . . will inevitably necessitate a delay in the impending trial date, if for no other reason than that the local assistant United States attorneys as well as the local judge would have to prepare themselves for trial of this case.'" *Brooks*, 2008 WL 2944626, at *3 (quoting *Spy Factory*, 951 F. Supp. at 460); *see United States v. Datta*, 797 F. Supp. 2d 448, 451 (S.D.N.Y. 2011). There is a public interest in this case, the same as in all other cases, in having the charges speedily and publicly tried. Transfer of the money laundering counts—with the delay and additional cost that such transfer would bring—"does not comport with the efficient or fair administration of justice." *Spy Factory*, 951 F. Supp. at 463; *see Flom*, 2015 WL 6506628, at *8.

M. Shvartsman argues that transfer would "also afford the defense adequate time to prepare while complying with the Court's previously scheduled trial of the underlying insider trading charges." Dkt. No. 92 at 1. But that factor does not justify transfer. The Court gave M. Shvartsman additional time to prepare for the money laundering charges. *See* Dkt. No. 85. Trial will now begin almost three months after the Superseding Indictment was returned. Information about the relevant transfers was contained in the Government's search warrant affidavits, which were produced to M. Shvartsman months ago. The Speedy Trial Act contemplates that there will be a speedy trial of all criminal matters. 18 U.S.C. § 3161(c)(1). M. Shvartsman's desire for further delay does not provide grounds for transfer of the money laundering counts to the Southern District of Florida.

Finally, there is one overriding factor that counsels against transfer: the interest in having all related counts tried together to avoid the inefficiency that would result were the Court to transfer the money laundering counts. M. Shvartsman's motion is predicated

on the implicit assumption that he will be acquitted of the securities fraud counts.  He makes that assumption explicit when he states that "[i]f and only if the government succeeds in obtaining a conviction on the insider trading charges, Mr. Shvartsman and the government (not the other defendants) would then have to contend with the money laundering charges."  Dkt. No. 92 at 4.  From that predicate, he reaches the conclusion that there would be no inefficiency in transferring the money laundering counts to Florida.  If he is acquitted and if an acquittal would bar a subsequent trial on the money laundering counts, then there will by definition be no duplication of effort. Of course, if M. Shvartsman were correct, and he were to be acquitted, then there would be no reason to transfer of the money laundering charges alone.  While there would be no duplication of effort, there also would be no increased convenience.  That case would simply not be tried.

However, M. Shvartsman's premise is incorrect.  Jeopardy would not attach if the Court were to transfer only the money laundering counts against the Government's opposition and, in effect, order that there be two trials of the charges in this Indictment. *See Currier v. Virginia*, 585 U.S. 493, 501 (2018) (holding that "defendant's consent to two trials" can "overcome a double jeopardy complaint under *Ashe* [*v. Swenson*, 397 U.S. 436 (1970)]").  Thus, regardless whether M. Shvartsman is convicted of the securities fraud counts, an order transferring the money laundering counts alone to Florida would result in a tremendous duplication of effort, to the detriment of the judiciary, the Government, and M. Shvartsman.  M. Shvartsman does not dispute that evidence of his alleged money laundering is admissible on the securities fraud counts regardless whether he is charged with money laundering.  Evidence that he engaged in deceptive financial

12

transactions with the proceeds of his securities trading would show consciousness of guilt. *See United States v. Norris*, 513 F. App'x 57, 60 (2d Cir. 2013) (summary order); *United States v. Hatfield*, 685 F. Supp. 2d 320, 327 (E.D.N.Y. 2010) (concluding in a securities fraud prosecution that "[defendant's] alleged decision to transfer his assets out of the country . . . is more probative than prejudicial, as it tends to show [his] consciousness of guilt"); *United States v. Barrett*, 153 F. Supp. 3d 552, 568 (E.D.N.Y. 2015); *United States v. Fishbein*, 2023 WL 2734428, at *2 (S.D.N.Y. Mar. 31, 2023) (ruling joinder of charges concerning two alleged schemes was proper because "[i]n a trial on the Rental Scheme only, the Government proffered that it would use evidence that Fishbein hid the Rental Scheme proceeds from his Medicaid applications as evidence that he knew the Rental Scheme income was fraudulent. Thus, evidence of the Medicaid Scheme would likely be admissible"). Evidence that would be admissible on the money laundering counts thus would be received in the trial of the securities fraud counts, even if the money laundering counts were transferred. And, if the money laundering counts were transferred, evidence of M. Shvartsman's alleged securities fraud would be admissible in the transferred case, even if M. Shvartsman is acquitted of that conduct in the earlier trial in New York. The Government will be required to prove in the money laundering case both that the transactions involved the proceeds of specified unlawful activity and that M. Shvartsman knew that the proceeds were those of unlawful activity. *See United States v. Maher*, 108 F.3d 1513, 1526 (2d Cir. 1997); *United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684, 688 (S.D.N.Y. 2017). With respect to both elements, there could be no more probative evidence than that M. Shvartsman himself engaged in the specified unlawful activity that generated the proceeds that he

then laundered.  *See United States v. Bourne*, 2011 WL 4458846, at *2 (E.D.N.Y. Sept. 23, 2011); *see also United States v. Zanghi*, 189 F.3d 71, 82 (1st Cir. 1999) (explaining evidence "directly relevant" to a charged offense is admissible even if it "overlaps with evidence of other, uncharged bad acts").  In short, the two trials would have overlapping evidence.  All that would be accomplished through a transfer would be that the same evidence would be presented twice, once to a New York Jury and a second time to a Florida jury.  Such a result might give M. Shvartsman the perceived tactical advantage of avoiding a trial on the two sets of charges together.  But that advantage is not the objective of Rule 21 and would be one to which Mr. Shvartsman is not entitled.  M. Shvartsman does not argue that he is entitled to a severance under either Rule 8 or Rule 14.  The Court will not give him that result under Rule 21.[1]

## II.    M. Shvartsman's Motion for a Bill of Particulars

M. Shvartsman also argues that the Court should order the Government to provide him a bill of particulars identifying the deliberate acts of concealment with which he is charged in connection with the money laundering counts.  Dkt. No. 92 at 9–10.  That motion is without merit.

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes the Court to "direct the government to file a bill of particulars."  Fed. R. Crim. P. 7(f).  The purpose of a bill of particulars is to permit a defendant "to identify with sufficient particularity the nature of the charges pending against him, thereby enabling defendant to prepare for trial, to prevent surprise,

---

[1] *United States v. Ohran*, 2000 WL 620217 (S.D.N.Y. May 12, 2000), cited by M. Shvartsman, is distinguishable.  The court there transferred a case, and not individual counts, charging the defendant with embezzling funds located in a bank account in Florida by drawing checks on the account while he was located in Florida, when the only connection to New York was that the trust that was the victim of the account was created in New York for the benefit of creditors in New York and the defendant was appointed trustee in New York.  *Id.* at *1–2.

and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam); *see also United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (same).  However, "[a] bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *United States v. D'Amico*, 734 F. Supp. 2d 321, 335 (S.D.N.Y. 2010) (quoting *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001)).  A district court has broad discretion in determining whether to grant a motion for a bill of particulars.  "Courts are only required to grant a bill of particulars 'where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019) (quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)); *United States v. Wey*, 2017 WL 237651, at *17 (Nathan, J.) (S.D.N.Y. Jan. 18, 2017) ("[T]he question in determining whether to grant [a bill of particulars] 'is not whether the information would be *useful* to the defense' but rather whether it is '*necessary* for the preparation of the defense.'" (emphasis in original) (quoting *United States v. Chalmers*, 410 F. Supp. 2d 278, 286–87 (S.D.N.Y. 2006))).

The Superseding Indictment here identifies the two sets of transactions that the Government contends were deliberate acts of concealment.  Dkt. No. 81 ¶¶ 15–16.  M. Shvartsman also received two seizure warrant affidavits outlining the grounds for seizing certain property involved in money laundering.  *See* Dkt. No. 96 at 17.  And the Government has provided him with extensive discovery.  The Superseding Indictment, plus the additional discovery, is sufficient to inform the defendant of the crime of which he is charged and to permit him to interpose a plea of jeopardy.  *See United States v. Walters*, 963 F. Supp. 2d 125, 134

(E.D.N.Y. 2013) ("The allegations contained in the Indictment, as well as the information already provided to Defendants in the course of discovery are therefore sufficient to enable Defendants to prepare for trial and prevent surprise, and this part of Defendants' motion is denied."); *United States v. Solomonyan*, 451 F. Supp. 2d 626, 642 (S.D.N.Y. 2006).  No more is required.  *See United States v. Mangini*, 2021 WL 1268507, at *2 (S.D.N.Y. Apr. 6, 2021) ("A bill of particulars is not necessary where the Government makes sufficient disclosures . . . by other means, such as through a detailed indictment and discovery.").

## CONCLUSION

For the foregoing reasons, M. Shvartsman's motions are DENIED.  The Clerk of Court is respectfully directed to close Dkt. No. 91.


SO ORDERED.


Dated: March 25, 2024
       New York, New York                    _____
                                                      LEWIS J. LIMAN
                                                United States District Judge