O3t2ShvC kjc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,                New York, N.Y.

4            v.                              23 Cr. 307 (LJL)

5   MICHAEL SHVARTSMAN, *et al.*,

6            Defendants.

7   ------------------------------x         Conference

8                                           March 29, 2024
                                            10:10 a.m.
9

10  Before:

11                 HON. LEWIS J. LIMAN,

12                                          District Judge

13

14                    APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  ELIZABETH A. HANFT
17       MATTHEW R. SHAHABIAN
         Assistant United States Attorneys
18

19  TAI PARK, PLLC
         Attorneys for Defendant M. Shvartsman
20  BY:  TAI HYUN PARK

21

22  SERCARZ & RIOPELLE, LLP
         Attorney for Defendant G. Shvartsman
    BY:  ROLAND G. RIOPELLE
23

24  SHAPIRO ARATO BACH, LLP
         Attorney for Defendant Garelick
25  BY:  ALEXANDRA  A. E. SHAPIRO
         JONATHAN BACH

1          (Case called)

2          THE DEPUTY CLERK:  Starting with counsel for the

3   government, please state your appearance for the record.

4          MS. HANFT:  Good morning, your Honor.  Elizabeth Hanft

5   and Matthew Shahabian for the government.

6          THE COURT:  Good morning.

7          MR. SHAHABIAN:  Good morning, your Honor.

8          MS. SHAPIRO:  Good morning, your Honor.  Alexandra

9   Shapiro and Jonathan Bach for defendant Bruce Garelick, and our

10  client waives his appearance here.

11         MR. RIOPELLE:  Good morning, your Honor.  Roland

12  Riopelle for defendant Gerald Shvartsman.

13         THE COURT:  Okay.  And I take it your client also

14  waives his appearance?

15         MR. RIOPELLE:  Yes, your Honor.  I thought that was

16  pretty clear.

17         MR. PARK:  Good morning, your Honor.  Tai Park for

18  Michael Shvartsman, who also waives his appearance.

19         THE COURT:  Okay.

20         All right.  The conference is intended primarily for

21  scheduling purposes but, Mr. Park, you sent me a letter dated

22  March 24 in which you complained about the volume of some

23  recent discovery from the government, that the government

24  intends to produce further discovery, and that you've got a

25  privilege issue.

O3t2ShvC kjc

1          Let me hear your concerns, and we will see if there is

2     a way to address them.

3          MR. PARK:  Your Honor, I wrote that letter in hopes

4     that it would further support the motion for a transfer of

5     venue on the money laundering counts because I'm not exactly

6     sure how it can be resolved without more passage of time and

7     trying to work this out, and obviously your Honor has since

8     denied the motion for transfer.

9          I don't know yet, Judge, when the government is going

10    to finish its production with respect to bank records and other

11    records that they have told us is forthcoming.  Those all

12    relate to the money laundering counts.  We are still going

13    through the privilege log that was included or that the

14    government subsequently produced to us that the bank -- that

15    the SNB Bank is the bank through which the government contends

16    some part of the DWAC trading proceeds moved and it's a

17    critical part of their money laundering charge.

18         The bank produced a fairly extensive privilege log.

19    We are still kind of slogging through those.  As I indicated in

20    my letter, one of the apparent and kind of immediate problems

21    that jumped out at me is that there are some entries, many

22    entries in it that don't describe who the communication was

23    between, what the basis for that -- the privilege assertion is.

24    Those are all documents that apparently were completely

25    withheld, not simply redacted.  So I'm not sure that we can

1    resolve that during today's conference because we haven't,

2    frankly, gotten our arms completely yet around the objections

3    and concerns that we would have.  Ordinarily we would want to

4    go back to the government, try to work these out, talk to the

5    bank's counsel, and try to -- and try to winnow down the issues

6    that cannot be resolved, so that it is ripe for judicial

7    action.  The problem is one of timing, that we still haven't

8    gotten our arms around the production that has been sent to us

9    in recent days and we are still waiting on more without an

10   understanding of when those are actually going to be completed.

11   So that's where we are, Judge.

12           THE COURT:  What I would like to do, if it's possible,

13   is try to set up a schedule so that if there is an issue with

14   respect to privilege, you are in a position to tee it up

15   quickly so I can make a decision quickly so that you've got --

16   if there are documents that are improperly withheld or that

17   you've got a right to them, we can make sure that you get them.

18           Let me hear from Ms. Hanft or --

19           MR. SHAHABIAN:  With the Court's indulgence, I will

20   handle this one, your Honor.

21           To start, I recognize the government did not put a

22   letter in in response to Mr. Park's letter, given the Court's

23   denial of the severance motion.  The production that Mr. Park

24   is referring to, as he notes, is primarily from SNB Bank, which

25   is one of the banks involved in the money laundering count.

1    The production is not predominantly about the charged conduct

2    in this case.  The government's grand jury investigation is

3    ongoing.  It sweeps more broadly than just this case and these

4    defendants.  And in furtherance of that investigation, the

5    government recently obtained the production to which Mr. Park

6    refers.

7         Given the upcoming trial date, the government is also

8    getting its arms around what SNB has produced, and we wanted to

9    make sure the defense had the same access to the same documents

10   the government did without conceding that those materials are

11   necessarily Rule 16 in this case.  Just given the time

12   constraints, we wanted to make sure that the defense had access

13   to all of the documents as we did.

14        But my understanding from my conversations with SNB's

15   counsel is that the majority of those documents relate not to

16   the charged money laundering conduct in this case.  And so we

17   are happy to work with Mr. Park and, as we get a better

18   understanding of what was produced, we can narrow the scope of

19   what was actually relevant to this case.

20        But as the government received it, we have produced it

21   to make it available to the defense.  But the majority of it is

22   just not actually part of this case.

23        THE COURT:  The figure of 240,000 pages is essentially

24   meaningless because -- particularly when it applies to bank

25   documents without knowing what the subpoena asked for, what the

1    documents are.  At least my experience with bank documents is

2    that they usually pertain to certain accounts and you should be

3    able to indicate which accounts might be relevant and which

4    accounts wouldn't be relevant or that you wouldn't use in this

5    case.

6                MR. SHAHABIAN:  Yes, your Honor.

7                To give some more color on the production, so your

8    Honor is right, a lot of the volume is bank records.  As the

9    Court knows from the briefing on the money laundering charges,

10   the account at SNB was a high-volume business account that did

11   many transactions in short periods of time.  Many of the

12   documents are those transaction documents, individual

13   transactions running through that account, most of which are

14   just the normal business of that account, not the actual money

15   laundering conduct.

16               In addition to account specific documents, the

17   government has also produced e-mails, including e-mails solely

18   within SNB, not e-mails involving any of the defendants.  It

19   involves e-mails with people who are not charged defendants in

20   this case.  It involves corporate policies and corporate

21   records internal to SNB, how they handle things like, know your

22   customer regulations, anti-money laundering regulations, things

23   that relate to the bank's handling of this account and related

24   accounts and aren't particular to the defendants' conduct so

25   much as how the bank handled certain representations or

1    documents.

2         THE COURT:  Are you in a position to be able to tell

3    Mr. Park which of those documents you believe to be relevant to

4    the case and to make some commitments as to what you intend to

5    offer at trial?  So at least to make his life a little bit

6    easier in looking through the documents, it may be that there

7    are documents that you don't intend to use that will be

8    relevant to him, but at least you can provide him some

9    guidance.

10        MR. SHAHABIAN:  Yes, your Honor.

11        We are not in a position to do that today as we are

12   also trying to get our arms around the productions that we also

13   just recently received, but we do understand the Court's

14   concern and should be able to make those kinds of

15   representations to Mr. Park shortly.

16        THE COURT:  Mr. Park also made reference to ongoing

17   productions, and maybe you foreshadowed that a little bit by

18   indicating that this is an ongoing grand jury investigation.

19   Are there documents right now that you have subpoenaed but you

20   haven't received that you intend to use at trial; and, if so,

21   when do you expect to produce them?  I realize, by asking the

22   question, you don't know what's going to be in the documents.

23   But sometimes you request something for the purpose of the

24   case.

25        MR. SHAHABIAN:  Yes, your Honor.  And the government

1    has issued trial subpoenas that are returnable the first day of

2    trial.  So obviously parties can produce earlier, but that's

3    when they are returnable.  Nothing in terms of the volume of

4    the SNB Bank production, more things like travel records, hotel

5    records, things that, as we are obtaining, we are producing.

6    It is not going to be anything like the volume of what we just

7    received from SNB which, frankly, was surprising to the

8    government when we received that many documents, as well.

9         THE COURT:  Do you have thoughts about if Mr. Park

10   intends to challenge the assertion of the privilege, how to tee

11   that up quickly?  For one, I gather, but I will ask him,

12   Mr. Park has not served his own subpoena on SNB Bank.  There

13   may be a question about whether he's got standing to challenge

14   their assertions of privilege, but I would hope that that is an

15   issue that we can get beyond.  Tell me what your thoughts are.

16        MR. SHAHABIAN:  Yes, your Honor.  Before I turn to

17   that, my colleague pointed out the SNB production is still

18   ongoing.  We understand we have the majority of the documents,

19   but there may still be some additional productions we should

20   obtain from SNB shortly.  They are aware of our trial date, and

21   we have pressed the urgency of getting anything additional they

22   have from them.

23        THE COURT:  Maybe you could also press on them not

24   just the urgency of the trial date but that the judge has

25   impressed on you the urgency of getting the documents as soon

1   as possible so that they can be produced to the defense and

2   that the judge scheduled a conference precisely for that

3   purpose.

4           MR. SHAHABIAN:  Yes, your Honor, we will do that.

5           And with respect to the privilege log issue, as the

6   Court is aware from our last conference, this came up with

7   respect to privilege logs from DWAC and other related entities.

8   We worked with Mr. Park to try to sort of be the go-between

9   between counsel for those entities and Mr. Park's concerns with

10  the privilege log.  We are happy to try to do the same here to

11  avoid unnecessary subpoenas and standing issues.

12          THE COURT:  Okay.  Mr. Park, the reason why I

13  scheduled this conference——and maybe I didn't need to have all

14  of you in——was because I got a letter from you saying I have

15  160,000 -- sorry 240,000 pages of documents to go through, and

16  I wanted to see whether there were things that I could do to

17  push the case along and avoid problems down the road.  Are

18  there any other suggestions or requests that you would make?

19          MR. PARK:  First of all, I appreciate very much your

20  Honor's efforts to intercede in an effort to ameliorate any

21  difficulty that the defense is going to face given the time

22  frame.

23          But I did want to, besides us continuing to work with

24  the government, I think it would be helpful to set a schedule

25  with respect to the privilege issues.  And I want to point out

1    something—I understand Mr. Shahabian's representation to the

2    Court and I respect it—that the bulk of these documents and

3    perhaps the privileged materials don't really relate to the

4    money laundering charges.

5        But as my letter reflects, your Honor, in addition to

6    the money laundering charges, the government recently provided

7    notice of other bad acts under Rule 404(b), and at least one of

8    them pertains to alleged misrepresentations to the bank that my

9    client was allegedly involved in with respect to the nature of

10    the business that would be of the fund that would be flowing

11    through that bank account.

12        THE COURT:  That's the cannabis related business?

13        MR. PARK:  Correct, your Honor.  And our position is

14    that the bank absolutely had full knowledge and awareness of

15    the nature of the funds that it paid for processing that would

16    be going toward payments of cannabis merchants.

17        Now, while it may be strictly accurate --

18        THE COURT:  Refresh me.  Is the sale of cannabis

19    specified unlawful activity?  I know it is not the one that's

20    charged in the indictment.

21        MR. PARK:  No, it's not, your Honor.  Oh, is it a

22    separate specified unlawful activity?  I don't know the answer

23    to that, your Honor.  Certainly I don't know the answer to that

24    as it pertains to legitimate businesses that are lawfully

25    conducted within various states.

1          But coming back to Mr. Shahabian's representation, I

2     think we need to take a broader look at what the government

3     intends to do at trial, and they have already signaled that

4     they intend to bring forward in the trial allegations that

5     misrepresentations by -- either explicitly or by omission were

6     made to a bank.

7          As I look at -- just, again, just even a glancing

8     review of the privilege log suggests that there were kind of

9     intensive discussions with counsel regarding this account that

10     was opened.  At one point they received a grand jury subpoena,

11     from I believe in April of 2023, again, kind of frequent

12     attorney-client communications, the nature of which of course

13     we are not aware, and the bank continued to process the

14     payments.

15          And so, again, kind of if the government says we are

16     not -- these are not related to the money launder charge and

17     they also represent we are not going to produce -- you know,

18     kind of introduce other acts that are not related to the money

19     laundering counts, that's fine, Judge, but they can't kind of

20     have it both ways and say that they are not related at all.

21          So it is just, again -- and I'm not asking for

22     reconsideration of the motion for transfer.  What I am saying,

23     though, Judge, is these kinds of very difficult issues of

24     discovery, privilege, etc., sometimes take months to sort out

25     just with parties that are working very hard.  And the

1  government in this case decided to charge the money laundering

2  counts on February 8, and the underlying insider trading

3  charges are enormously complex and challenging in and of

4  themselves.  And so for me and my team and Mr. Shvartsman to be

5  struggling to get ready for that insider trading charge while

6  at the same time trying to just drink from a fire hose, really,

7  with respect to this belatedly filed money laundering charge is

8  just patently unfair, Judge.

9        And so that's why we asked for the transfer, because

10  that would account -- that would enable the government to

11  pursue money laundering charges but giving us time to

12  adequately prepare for that.  And I think what this letter was

13  trying to feature is these problems are not just abstract, they

14  are very, very imminent, and they are very pragmatic as to how

15  much --

16        THE COURT:  That's the reason why we are -- I

17  scheduled this conference, to come up with pragmatic ways of

18  dealing with it.  I'm not sure that I would subscribe -- and in

19  fact I don't subscribe to the notion that the money laundering

20  count was belated, but let's put that aside.  You suggested

21  that I set a schedule for motion practice with respect to the

22  assertion of privilege by SNB Bank.  We don't have them here,

23  but I think we can schedule a tentative date or procedure to

24  address any issues.  What are your thoughts?

25        MR. PARK:  I would like to confer with the government,

O3t2ShvC kjc

1   your Honor --

2           THE COURT:  Okay.

3           MR. PARK:  -- because I would like to see how much we

4   can accomplish without --

5           THE COURT:  So maybe what you will do is send me a

6   letter by mid next week --

7           MR. PARK:  Very good, your Honor.

8           THE COURT:  -- with a suggestion along those lines.

9           MR. PARK:  Very good, your Honor.

10          THE COURT:  Let me ask the government, I'm not going

11  to rule on any 404(b) issues right now, but how does cannabis

12  play a role in this?

13          MR. SHAHABIAN:  Yes, your Honor.  Mr. Park is correct.

14  We did notice under 404(b), and I didn't mean to be carving

15  that out from what we think is relevant from the production,

16  that the bank was misinformed as to the nature of the business

17  that Mr. Shvartsman and his business partners were operating

18  through that bank account, and we think that is relevant 404(b)

19  evidence.  It goes to intent with respect to the money

20  laundering count.  It goes to knowledge.  And we will identify

21  any documents in the production that we think are relevant to

22  that.

23          That notice, though, wasn't based primarily or even, I

24  think, at all on our review of the productions we just

25  received.  It is based on prior productions and conversations

1    with witnesses.

2              But to the extent that there are documents that are

3    relevant to that notice, we will point those out for Mr. Park

4    and the scope of what we think is relevant for this trial.

5              What I was trying to say is there is an investigation

6    that is broader than Mr. Shvartsman and his conduct, and many

7    of the documents relates to that, and that's what I am saying

8    we don't think is Rule 16.

9              THE COURT:  I understand that.  You may need to

10   convince me how the fact that the account was used for a

11   cannabis business is 404(b) evidence with respect to the intent

12   to use the account to conceal the proceeds of insider trading.

13   But, again, I'm not deciding on that now, just --

14             MR. SHAHABIAN:  Understood.

15             THE COURT:  -- a point of curiosity.

16             So maybe Wednesday of next week send me a letter about

17   what you can do.  The government has hopefully heard me and

18   will be in touch with SNB Bank so they can put their foot to

19   the pedal and get the documents over as quickly as possible and

20   that you are to try to work with Mr. Park to identify -- help

21   him work through the documents.

22             MR. SHAHABIAN:  Yes, your Honor.

23             THE COURT:  Mr. Park.

24             MR. PARK:  Your Honor, on a slightly different note,

25   but not all that different, I have had communications with the

1    government regarding another item of discovery that I think is

2    very important and, frankly, goes to one of the elements of the

3    crime of insider trading.  We have not been able to resolve

4    this between us and the government.  I have been trying to

5    figure out whether my next step is to come to your Honor for

6    relief or to try to do -- serve some process on the entity

7    itself.

8            But the issue is this.  DWAC, the company at issue,

9    whose information was allegedly misappropriated, has filed a

10   lawsuit against Patrick Orlando, who was DWAC's former CEO

11   during the relevant time period.  And they have alleged that,

12   prior to the public announcement of DWAC potentially merging

13   with Trump Media Group, Mr. Orlando was overheard speaking to

14   the press about the potential merger with TMG.  This is a

15   public filing that DWAC has filed, I believe, in state court in

16   Florida against Mr. Orlando, and they make other accusations

17   about him.

18           I asked the government, and I actually wrote a letter

19   to the government essentially outlining the allegations in the

20   DWAC, a lawsuit against Mr. Orlando.  I had always presumed

21   that Mr. Orlando would be a witness for the government in this

22   case.  But whether he is or not, I consider this flat-out

23   *Brady* information.  DWAC has avowed that it is cooperating with

24   the government.

25           As your Honor knows, one of the last issues I raised

1  in this connection was in connection with DWAC's failure to

2  produce a privilege log.  I spoke to the government about that.

3  They talked to DWAC.  Within days, DWAC produced a privilege

4  log.  The government, in my view, all they need to do is pick

5  up the phone and say, What's the basis for your allegations in

6  a verified complaint publicly against Orlando that he spoke to

7  the press?  Obviously one of the elements is that the

8  information about potential TMG merger was not public.  If he

9  is talking to the press, it undermines that element.  That's

10 *Brady*.  I think, Judge, that it would have been common sense

11 for the prosecutor in charge of this case to just call him up

12 and say, Where's this coming from?  Send it over to me.  Let me

13 know.  And then, pursuant to their *Brady* obligations, produce

14 it to the defense.  They have declined to do that, and I'm just

15 not sure what the next step is for me, Judge, other than

16 potentially to bring it to your attention.

17      I also thought about some kind of a Rule 17(c)

18 subpoena on the company, and how would I phrase it, because I

19 don't know whether they have witnesses, whether they have

20 documents.  It would be -- you know, they could potentially

21 hold off until the first day of trial, which doesn't give me

22 enough time to investigate.

23      I don't think I should be in this position, Judge, in

24 all candor.  I think the government should simply call up

25 Wilmer Cutler, who represents DWAC and has represented DWAC for

O3t2ShvC kjc

1    years now, and just say what's the basis for your filing?

2                THE COURT:  Ms. Hanft or Mr. Shahabian.

3                MS. HANFT:  Yes, your Honor.

4                We have spoken to Mr. Park about this.  In the

5    government's view, this is information that's not in our

6    possession and so we are not obligated to go out and look for

7    it and then produce it to Mr. Park.

8                What we have told Mr. Park is to the extent that the

9    government decides to obtain this information, of course we

10   hear him loud and clear as to how he views this information,

11   and we will produce anything that we think we must produce

12   pursuant to our *Brady* obligations.

13               But for Mr. Park to simply desire that we make a phone

14   call to a law firm because that law firm has previously

15   produced certain items to the government and ask the basis for

16   allegations in a complaint that are likely tied up in all kinds

17   of privilege issues as well, we don't think is appropriate.

18               But the message that Mr. Park views anything going to

19   whether or not a particular witness leaked information to the

20   press as, you know, going to the element, one of the elements

21   of insider trading, we hear it loud and clear and understand

22   our obligations with respect to that.

23               THE COURT:  So Mr. Park, it's not *Brady* if they don't

24   have it.  So isn't the answer for you to serve a Rule 17

25   subpoena?  You might come to me.  I think it is now, you know,

1  transparent in terms of what it is that you are asking for.

2  And I don't know whether it would satisfy the *Nixon* standards

3  for you to get the stuff prior to trial or not.  I don't know

4  what the government's position would be with respect to that,

5  but it seems to me that's the next step.

6      We have all been in a position of drafting subpoenas

7  and trying to figure out the right way to get it.  If it's

8  information that's in a litigation, maybe there is actually

9  some stuff that's been produced in the litigation between the

10  parties.  I don't know.

11      MR. PARK:  We haven't been able to see anything like

12  that, your Honor.

13      THE COURT:  That doesn't surprise me.  My guess is

14  there is some form of a "confi" agreement in that case, right,

15  or is there not?

16      MR. PARK:  It was just filed, I think, toward the end

17  of February, so I doubt there has been any exchange of

18  discovery.

19      Judge, look, I mean, I will do that.  I just -- I

20  mean, I just find this surprising, I mean, that I have got an

21  indicted case, they are about to go to trial, and one of the

22  issues is whether it is nonpublic or not.  You would think they

23  would want to know the answer to this question.

24      THE COURT:  I hear what you say.  But, on the other

25  hand, sitting where I am and without knowing all of the

O3t2ShvC kjc

1    back-and-forth, I'm not going to get involved --

2              MR. PARK:  I understand.

3              THE COURT:  -- in the discovery dispute.

4              MR. PARK:  I understand.

5              THE COURT:  But if there is an issue with respect to

6    Rule 17, I've been trying in this case to turn to things

7    quickly because I understand the need for the defense to

8    prepare.

9              MR. PARK:  Thank you, your Honor.

10             THE COURT:  Anything else from the government?

11             MS. HANFT:  Nothing from the government.  Thank you,

12   your Honor.

13             THE COURT:  Okay.  Ms. Shapiro, Mr. Bach,

14   Mr. Riopelle, I haven't had anything from you.  I don't know if

15   you've got anything for me, or I can let you go for the

16   weekend.

17             MR. BACH:  We have nothing.

18             Mr. Garelick is really not addressed in the 404(b)

19   notice.  There appears to be almost nothing raised with respect

20   to our client, Mr. Bruce Garelick.  However, there is one

21   sentence where the government kind of says as to all three

22   defendants and then says something that we consider very vague.

23             THE COURT:  Maybe you can work that out with the

24   government.

25             MR. BACH:  We have been trying.  And I am just noting

1    it because we haven't gotten any clarification yet.  If we

2    can't work it out, we will raise it with the Court.

3              MS. HANFT:  And just for the record, your Honor,

4    counsel did raise it to us I believe it was a day or two ago,

5    and so we will work to respond.

6              THE COURT:  Okay.

7              MS. SHAPIRO:  It was more than that.

8              MR. BACH:  It was more than that.

9              THE COURT:  It may have been more than that.  Whatever

10   it is, you will work to respond before there is briefing on

11   404(b) that has to come before me.

12             Mr. Riopelle -- or Ms. Shapiro?

13             MS. SHAPIRO:  I believe the deadline for motions *in*

14   *limine* is actually next Thursday.  So it's less than a week

15   away and we don't know the answer to the question.

16             THE COURT:  Ms. Hanft and Mr. Shahabian are going to

17   get you an answer and, if not, then you will brief it.

18             Mr. Riopelle.

19             MR. RIOPELLE:  My client and his partner are religious

20   Jews, and they note that the trial is set to start the last two

21   days of the Passover week.  They had asked me to ask for a

22   two-day adjournment of the trial so we could complete the

23   Passover week before we begin the proceedings.  So on their

24   behalf, I make that request, your Honor.  I think I had

25   mentioned it to the government in a phone call recently.

1      THE COURT:  I mean, I'm very disinclined to grant that

2  request, so I'm not going to grant it.  You can renew it on

3  paper if there is really a strong basis for it.

4      MR. RIOPELLE:  Thank you, your Honor.

5      MR. PARK:  Your Honor, my client also made this

6  request, and we were going to have Mr. Riopelle address it.

7  But this -- what this could mean, Judge, is that the jury pool

8  from which the jury would be drawn is not reflective of what I

9  think Mr. Shvartsman is entitled to.  If there are a number of

10  jurors who are in the pool who are not there because they are

11  observant, I think that's unfair, Judge.  And so I have to

12  confess I was not aware of the April 29 date and how that

13  interplays with Passover, but I believe this is a serious

14  issue, Judge, and we are just asking for a couple of days.

15      THE COURT:  Why don't you raise that when you file

16  your motions *in limine*.  You can then brief if you think that

17  there is a fair cross-section argument.  I'm not going to

18  decide it on the fly.

19      MR. PARK:  Very good, Judge.  Thank you.

20      MR. BACH:  One more thing, Judge.  We have also -- and

21  you might have the same answer you had for me before.  We have

22  not reached any agreement with the government on the date to

23  disclose 3500 material.  We have asked them to tell us the date

24  that they propose, and they have not even told us the date that

25  they would propose.  Obviously there is a lot of time pressure

O3t2ShvC kjc

1    here.  We would like the 3500 material sooner than later.  But

2    at least we want to know what their position is on that

3    subject.

4                THE COURT:  Is the government prepared to provide a

5    response right now?

6                MS. HANFT:  Not right now, your Honor, but we are

7    happy to provide a date to counsel within the next, I would

8    say, week.  We will give them -- we will commit to a date for

9    3500.

10               MR. BACH:  That's essentially not --

11               THE COURT:  Why don't you do it by Wednesday?

12               MS. HANFT:  Okay, your Honor.  Understood.

13               THE COURT:  All right.  How --

14               MS. HANFT:  Your Honor, one other thing.  Ms. Shapiro

15   just said that motions *in limine* were due next Thursday.  I

16   want to confirm they are in fact due next Friday.

17               THE COURT:  What I have is April 5.

18               MS. HANFT:  That's Friday.  Thank you, your Honor.

19               THE COURT:  All right.  So Ms. Shapiro you don't have

20   to send me anything on Thursday.  It's April 5.

21               MS. SHAPIRO:  Okay.  Sorry.  I made a mistake.

22               THE COURT:  Have a good weekend, everybody.  Thank

23   you.

24               COUNSEL:  Thank you, your Honor.

25                                  oOo