O433MSHP

<pre>
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        23 Cr. 307-1(LJL)

 5   MICHAEL SHVARTSMAN,

 6              Defendant.

 7   ------------------------------x    Plea

 8                                       New York, N.Y.
                                         April 3, 2024
 9                                       11:20 a.m.

10
     Before:
11
                       HON. LEWIS J. LIMAN,
12
                                         District Judge
13

14                          APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     DANIEL NESSIM
17   MATTHEW SHAHABIAN
          Assistant United States Attorneys
18
     ALAN FUTERFAS
19   ELLEN RESNICK
          Attorneys for Defendant
20
     ALSO PRESENT:  Special Agent Marc Troiano, FBI
21

22

23

24

25
</pre>

O433MSHP

1          THE DEPUTY CLERK:  In the matter of 23 Cr. 307-1,

2    U.S.A. v. Michael Shvartsman.

3          Starting with counsel for the government, please state

4    your appearance for the record.

5          MR. NESSIM:  Good morning your Honor.  Daniel Nessim

6    and Matthew Shahabian for the government.  Joining us at

7    counsel table is FBI Special Agent Marc Troiano.

8          THE COURT:  Good morning.

9          MR. FUTERFAS:  Good morning.  Alan Futerfas for

10   Mr. Shvartsman, and joined by Ellen Resnick from my office.

11         THE COURT:  Good morning, Mr. Futerfas.

12         MR. FUTERFAS:  I appreciate your patience.  I had a

13   matter across the street.  Thank you.

14         THE COURT:  So I gather, Mr. Futerfas, that you have

15   an application.

16         MR. FUTERFAS:  Yes, your Honor.  We are going to -- we

17   move to withdraw the previously entered plea of not guilty, and

18   in place therefor enter a plea to Count Three of the indictment

19   pursuant to a plea agreement and related preliminary order of

20   forfeiture.

21         THE COURT:  Very well.  Before we proceed further,

22   there's one matter with respect -- a couple of matters with

23   respect to the plea agreement that I wanted to go through.

24         The first is that I note that there is a markup in

25   handwriting on the first paragraph on the second page of the

1  plea agreement.  Mr. Futerfas, I'll confirm that later on with

2  your client, but I gather those are changes that you've agreed

3  to with the government and has been marked up this morning.  Is

4  that correct?

5          MR. FUTERFAS:  That's correct.  There are some typos

6  that I think your chambers found that neither the government

7  nor the defense identified, but that's my initials and my

8  client's initials accepting those changes.

9          THE COURT:  And the same thing from the government?

10          MR. NESSIM:  Yes, your Honor.

11          THE COURT:  And then Mr. Futerfas, on the third page

12  of the plea agreement, the second paragraph under sentencing

13  range, there's reference to what would happen in the event that

14  there was a global plea in this case.  I want to confirm that

15  your understanding is the same as mine.

16          My understanding is that there will not be a global

17  resolution by the deadline of yesterday, and that as a result

18  of that, the government is relieved of the obligation that it

19  otherwise would have to agree to a one-level downward variance.

20  Is that correct?

21          MR. FUTERFAS:  It is, your Honor.  Thank you.

22          THE COURT:  All right.  I'll confirm that also with

23  your client.

24          Mr. Shvartsman, I've been informed that you wish to

25  plead guilty to Count Three of the superseding indictment.  Is

O433MSHP

1   that correct?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  Sir, before I accept your guilty plea, I

4   am going to ask you certain questions so that I can establish

5   to my satisfaction that you understand what you are giving up

6   by waiving indictment, and that you wish to plead guilty

7   because you are guilty and not for some other reason.

8           If you do not understand any of my questions or if you

9   want to consult with your lawyer at any time, for any reason,

10  just let me know and I will give you as much time as you need

11  to do that, because it is essential in order to have a valid

12  plea that you understand each question before you answer.

13          Will you do that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Mr. Fishman, will you please swear

16  Mr. Shvartsman.

17          THE DEPUTY CLERK:  Please rise and raise your right

18  hand.

19          (Defendant sworn)

20          THE DEPUTY CLERK:  Thank you.

21          THE COURT:  Sir, you're now under oath, which means

22  that if you answer any of my questions falsely, you may be

23  prosecuted for the separate crime of perjury.  Do you

24  understand that?

25          THE DEFENDANT:  I do.

O433MSHP

1          THE COURT:  What is your full name?

2          THE DEFENDANT:  Michael Shvartsman.

3          THE COURT:  Can you try to put the microphone a little

4     bit closer to you.

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  How old are you, sir?

7          THE DEFENDANT:  53.

8          THE COURT:  How far did you go in school?

9          THE DEFENDANT:  I finished grade 12.

10          THE COURT:  Where was that?

11          THE DEFENDANT:  In Toronto, Canada.

12          THE COURT:  Have you ever been treated or hospitalized

13     for any mental illness?

14          THE DEFENDANT:  No, I've not.

15          THE COURT:  Are you now or have you recently been

16     under the care of a doctor or a psychiatrist?

17          THE DEFENDANT:  No, I'm not.

18          THE COURT:  Have you been treated or hospitalized for

19     any type of addiction, including drug or alcohol addiction?

20          THE DEFENDANT:  No, I've not.

21          THE COURT:  Have you taken any drugs, medicine or

22     pills or drunk any alcoholic beverages in the past two days?

23          THE DEFENDANT:  No, I've not.

24          THE COURT:  Is your mind clear today?

25          THE DEFENDANT:  Yes, it is.

O433MSHP

1          THE COURT:  Do you understand what is happening today?

2          THE DEFENDANT:  I do.

3          THE COURT:  Mr. Futerfas, do you have any doubt as to

4     your client's competence to plead at this time?

5          MR. FUTERFAS:  I do not.

6          THE COURT:  Does the government have any doubt as to

7     the defendant's competence to plead at this time?

8          MR. NESSIM:  No, your Honor.

9          THE COURT:  On the basis of Mr. Shvartsman's responses

10    to my questions, my observations of his demeanor here in court

11    today and previously, and the representations of counsel, I

12    find that Mr. Shvartsman, the defendant, is fully competent to

13    enter an informed plea of guilty at this time.

14          Now, have you received a copy of the indictment

15    containing the charges against you?

16          THE DEFENDANT:  I have, your Honor.

17          THE COURT:  Did you read it?

18          THE DEFENDANT:  I did, your Honor.

19          THE COURT:  Have you had enough of a chance to discuss

20    with your lawyers the charge to which you intend to plead

21    guilty and any possible defenses to that charge?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Have your lawyers explained to you the

24    consequences of entering a plea of guilty?

25          THE DEFENDANT:  They have.

O433MSHP

1          THE COURT:  Are you satisfied with the representation

2     you've received from your lawyers?

3          THE DEFENDANT:  I am.

4          THE COURT:  I'm now going to explain certain

5     constitutional rights that you have.  These are rights that you

6     will be giving up if you enter a guilty plea.  Please listen

7     carefully to what I'm about to say.  If you do not understand

8     something, stop me, and your lawyer or I will explain the

9     matter more fully.

10          Now, under the Constitution and laws of the United

11     States, you have a right to plead not guilty to the charges

12     contained in the indictment.

13          Do you understand that?

14          THE DEFENDANT:  I do.

15          THE COURT:  If you did plead not guilty, you would be

16     entitled to a speedy and public trial by a jury on the charges

17     contained in the indictment.

18          Do you understand that?

19          THE DEFENDANT:  I do.

20          THE COURT:  At a trial you would be presumed to be

21     innocent, and the government would be required to prove you

22     guilty by competent evidence beyond a reasonable doubt before

23     you could be found guilty.

24          Do you understand that?

25          THE DEFENDANT:  Yes, I do.

1          THE COURT:  A jury of 12 people would have to agree

2     unanimously that you were guilty, and you would not have to

3     prove that you were innocent if you were to go to trial.

4          Do you understand that?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  At that trial and at every stage of your

7     case, you would be entitled to be represented by a lawyer, and

8     if you could not afford a lawyer, one would be appointed at

9     public expense, free of cost to any charge to you, to represent

10    you.

11         Do you understand that?

12         THE DEFENDANT:  I do.

13         THE COURT:  During a trial, the witnesses for the

14    government would have to come to court and testify in your

15    presence.  Your lawyer could cross-examine the witnesses for

16    government, object to evidence offered by the government, and

17    offer evidence on your own behalf if you so desired.  And you

18    would have the right to have subpoenas issued or other process

19    used to compel witnesses to testify in your defense.

20         Do you understand that?

21         THE DEFENDANT:  I do.

22         THE COURT:  At a trial, although you would have the

23    right to testify if you chose to do so, you would also have the

24    right not to testify, and if you decided not to testify, no

25    one, including the jury, could draw any inference or suggestion

1    of guilt from the fact that you did not testify.

2               Do you understand that?

3               THE DEFENDANT:  I do.

4               THE COURT:  If you were convicted at a trial, you

5    would have the right to appeal that verdict.  Do you understand

6    that?

7               THE DEFENDANT:  Yes.

8               THE COURT:  Do you understand also that if you were

9    convicted at a trial, you would be able to appeal the pretrial

10   rulings I've made, including any rulings on motions to suppress

11   evidence or to dismiss the indictment?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Even now as you are entering this plea,

14   you have the right to change your mind and plead not guilty and

15   go to trial on the charges contained in the indictment.

16              Do you understand that?

17              THE DEFENDANT:  Yes, sir.

18              THE COURT:  If you plead guilty, and if I accept your

19   plea, you will give up your right to a trial and the rights

20   that I've just discussed, other than the right to a lawyer,

21   which you have regardless of whether or not you plead guilty.

22   But there will be no trial, and I will enter a judgment of

23   guilty and sentence you on the basis of your plea after I've

24   considered a presentence report, and whatever submissions I get

25   from your lawyers and the lawyer for the government.

O433MSHP

1      There will be no trial and no appeal with respect to

2  any of my pretrial rulings or with respect to whether you did

3  or did not commit the crime charged in Count Three.

4      Do you understand that?

5      THE DEFENDANT:  Yes, sir.

6      THE COURT:  If you plead guilty, you will also have to

7  give up your right not to incriminate yourself, because I will

8  ask you questions about what you did in order to satisfy myself

9  that you are guilty as charged in Count Three of the

10  superseding indictment, and you will have to admit and

11  acknowledge your guilt to that count.

12      Do you understand that?

13      THE DEFENDANT:  Yes, your Honor.

14      THE COURT:  Do you understand each and every one of

15  these rights?

16      THE DEFENDANT:  Yes, your Honor.

17      THE COURT:  Mr. Shvartsman, are you willing to give up

18  your right to a trial and the other rights I've just discussed

19  with you?

20      THE DEFENDANT:  Yes, your Honor.

21      THE COURT:  Now, do you understand that you are

22  charged in Count Three with securities fraud in violation of

23  Title 15, United States Code, Sections 78j(b) and 78ff, and

24  Title 17, Code of Federal Regulations Section 240.10b-5, and

25  Title 18, United States Code, Section 2, sometimes colloquially

1    referred to as Section 10(b) of the Securities Exchange Act and

2    Rule 10b-5 thereunder.

3           Do you understand that?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  Would the government please state the

6    elements of the offense in question.

7           MR. NESSIM:  Yes, your Honor.  Count Three charges the

8    defendant with securities fraud and specifically insider

9    trading.  There are two theories of insider trading that are

10   charged against the defendant.  The elements are as follows,

11   all of which would need to be proven beyond a reasonable doubt

12   at trial.

13          Under the misappropriation theory, the elements are

14   that the defendant misappropriated confidential information for

15   the purpose of trading in securities, and he did so in breach

16   of a duty owed to the source of that information, and he acted

17   willfully and knowingly in doing so.

18          Under tippee liability, which is an alternative theory

19   of liability under the count, the elements are that the tipper

20   in question breached a duty by tipping confidential

21   information, the tippee knew or had reason to know that the

22   tippee improperly obtained the information, that the

23   information was obtained through the tipper's breach, and the

24   tippee, while in possession of that material non-public

25   information, used the information by trading or by tipping for

O433MSHP

1    his own benefit, and that the defendant as the tippee acted

2    willfully and knowingly in doing.

3         In addition, the government would need to prove that

4    venue is proper in the Southern District of New York by a

5    preponderance of the evidence.

6         THE COURT:  Mr. Futerfas, am I correct that your

7    client's plea would intend to cover both theories?

8         MR. FUTERFAS:  I think based on the allocution it's

9    probably going to cover the misappropriate theory.

10        THE COURT:  I assume that's acceptable to the

11   government?

12        MR. NESSIM:  Yes, your Honor.

13        THE COURT:  Mr. Shvartsman, were you able to follow

14   what the government lawyer said?

15        THE DEFENDANT:  I was, your Honor.

16        THE COURT:  Do you understand that if you were to go

17   to trial, the government would have to prove all of those

18   elements beyond a reasonable doubt and would have to prove

19   venue in this district by a preponderance of the evidence?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  I am going to tell you the maximum

22   possible penalty for the crime charged in Count Three.  The

23   maximum means the most that could the possibly be imposed.  It

24   doesn't mean that is what you necessarily will receive.  But

25   you have to understand that by pleading guilty, you are

O433MSHP

1    exposing yourself to the possibility of receiving any

2    combination of punishments up to the maximum I'm about to

3    describe.  Do you understand that?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  First I am going to tell you about the

6    possible restrictions on your liberty.  The maximum term of

7    imprisonment for the crime charged in Count Three is 20 years,

8    which could be followed by supervised release of 3 years.

9            Supervised release means that you'll be subject to

10    supervision by the probation department.  There will be rules

11    of supervised release that you'll have to follow, and if you

12    violate those rules, you can be returned to prison without a

13    jury trial to serve additional time with no credit for time you

14    served in prison as a result of your sentence, and no credit

15    for any time spent on post-release supervision.

16            Do you understand that?

17            THE DEFENDANT:  Yes, your Honor.

18            THE COURT:  You should also understand, sir, that

19    there is no parole in the federal system, and that if you are

20    sentenced to prison, you will not be released early on parole.

21    There is a limited opportunity to earn credit for good

22    behavior, but you'll have to serve at least 85 percent of the

23    time you're sentenced to.

24            Do you understand that?

25            THE DEFENDANT:  Yes, your Honor.

1    THE COURT:  Second, in addition to these restrictions

2  on your liberty, the maximum possible punishment also includes

3  certain financial penalties.  The maximum allowable fine is $5

4  million or twice the gross pecuniary gain derived from the

5  offense or twice the gross pecuniary loss to persons other than

6  yourself, whichever is greater.  In addition, I can order

7  restitution to any person or entity injured as a result of your

8  criminal conduct.  I can also order you to forfeit all property

9  traceable to the commission of the offense or derived from the

10  offense or used to facilitate the offense.  And finally, I must

11  order a mandatory special assessment of $100.

12    Do you understand all of that?

13    THE DEFENDANT:  Yes, your Honor.

14    THE COURT:  Do you understand that these are the

15  possible maximum financial penalties?

16    THE DEFENDANT:  I do, your Honor.

17    THE COURT:  In your plea agreement with the

18  government, it is indicated that you admit to the forfeiture

19  allegation and agree to forfeit to the United States a sum of

20  money equal to $18.2 million in United States currency, and all

21  right, title and interest in the following specific property:

22  Any and all funds in account number 10511067 in the name of EFT

23  Business Services, LLC at SNB Bank; the vessel Provocateur,

24  formerly known as Ipanema, bearing IMO number 9802798; and

25  three Yamaha jet skis tendered to the Provocateur.

O433MSHP

1          Do you agree to forfeit that property and any property

2     that constitutes or is derived from the proceeds traceable to

3     the offense?

4          MR. FUTERFAS:  Your Honor, may I just note that there

5     is -- I know your Honor has a copy of it -- a consent

6     preliminary order of forfeiture.  That forfeiture order makes

7     clear that the maximum amount that -- the total amount the

8     government is seeking here is 8.2 million.  We recognize what

9     the plea agreement says, but we have a -- the consent order of

10    forfeiture is limiting the total amount to 18.2 million.

11         THE COURT:  Let me first confirm that with the

12    government.  Is that correct?

13         MR. NESSIM:  That's correct, your Honor.  While the

14    defendant is agreeing to forfeit his right to claim that

15    specific property, the maximum amount of forfeiture in

16    question, all things considered, is not to exceed the money

17    judgment amount of $18.2 million.

18         THE COURT:  Let me though first just confirm that the

19    defendant agrees to give up his rights to those properties and

20    to give up an amount up to $18.2 million.  Is that correct?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Are you a United States citizen?

23         THE DEFENDANT:  I'm not, your Honor.

24         THE COURT:  Do you understand that as a result of your

25    guilty plea, there may be adverse effects on your immigration

O433MSHP

1    status, including further detention following completion of

2    your sentence, and removal or deportation from the United

3    States?

4             Do you understand that?

5             THE DEFENDANT:  I do, your Honor.

6             THE COURT:  In fact, as your plea agreement states, as

7    a result of your guilty plea and conviction, it is very likely

8    that your deportation or removal from the United States is

9    presumptively mandatory, and that at a minimum, you are at risk

10   of being deported or suffering some other adverse immigration

11   consequences.

12            Do you understand that?

13            THE DEFENDANT:  Yes, your Honor.

14            THE COURT:  Did you discuss the possible immigration

15   consequences of your plea with your lawyers?

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  Do you understand that as a result of your

18   guilty plea, you may lose certain valuable civil rights, to the

19   extent that you have them or could otherwise obtain them now,

20   such as the right to vote, the right to hold public office, the

21   right to serve on a jury, and the right to possess any kind of

22   a firearm?

23            Do you understand that?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  Are you serving any other sentence, state

O433MSHP

1    or federal, or being prosecuted in state court for any crime?

2          THE DEFENDANT:  No, your Honor.

3          THE COURT:  Do you understand that if your lawyer or

4    anyone else has attempted to predict what your sentence will

5    be, that their prediction could be wrong?  No one, not your

6    lawyer, not the government's lawyer, no one can give you any

7    assurance of what your sentence will be, since I am going to

8    decide your sentence, and I'm not going to do that now.  I'm

9    going to wait until I receive a presentence report prepared by

10   the probation department, do my own independent calculation of

11   the sentencing guidelines range, consider it and any possible

12   departures from it, and also determine what a reasonable

13   sentence is for you based on the sentencing factors set forth

14   by Congress and contained in the statute found in 18 U.S.C.

15   Section 3553(a).

16         Do you understand that?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Have you discussed all of these issues

19   with your lawyers?

20         THE DEFENDANT:  I have, your Honor.

21         THE COURT:  Even if your sentence is different from

22   what your lawyer or anyone else has told you it might be, even

23   if it is different from what you expect or from what's

24   contained in the written plea agreement you've entered into

25   with the government, you will still be bound by your guilty

O433MSHP

1    plea and will not be allowed to withdraw your plea of guilty.

2         Do you understand that?

3         THE DEFENDANT:  Yes, your Honor.

4         THE COURT:  I understand that you have entered into a

5    written plea agreement with the government.  Is that correct?

6         THE DEFENDANT:  That is correct.

7         THE COURT:  I have that agreement in front of me.  I

8    am going to mark it as Court Exhibit 1.  I'm going to give it

9    today's date.  And in a moment I'm going to have my courtroom

10   deputy present it to you.  I am going to ask you to take a look

11   at the last page of the agreement and confirm to me that that

12   is your signature on the last page and tell me if you signed it

13   in the presence of your lawyer.

14        At the conclusion of today's proceedings, after

15   Mr. Fishman brings the agreement back to me, he will give it to

16   the government for the government to the retain.

17        Mr. Fishman.

18        THE DEFENDANT:  Yes, your Honor.

19        THE COURT:  Mr. Fishman, can you return it to me.

20        Did you read the plea agreement before you signed it?

21        THE DEFENDANT:  I did, your Honor.

22        THE COURT:  Did you discuss it with your lawyers

23   before you signed it?

24        THE DEFENDANT:  Yes, your Honor.

25        THE COURT:  Did you fully understand it before you

O433MSHP

1    signed it?

2              THE DEFENDANT:  I did.

3              THE COURT:  I want to go over some of the provisions

4    of the plea agreement to establish to my satisfaction that you

5    understand it.

6              One of the features of your agreement with the

7    government is that you've agreed on the guidelines range that

8    applies in this case, something called the stipulated

9    guidelines range.  Do you understand that?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  And in your case, the stipulated

12   guidelines range that you've agreed to with the government is

13   46 to 57 months of imprisonment and a fine range of $20,000 to

14   $5 million.

15             Do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  That agreement is binding on you.  Do you

18   understand that?

19             THE DEFENDANT:  I do, your Honor.

20             THE COURT:  It's binding on the government, but it's

21   not binding on me.  I have my own obligation to determine the

22   correct guidelines range and what the appropriate sentence is

23   in your case.  I'm not saying I will come up with any range

24   different from the one that you've agreed to with the

25   government, but if I do, I will not let you withdraw your plea,

1    even if the range I determine is higher than the one you've

2    agreed to with the government.

3            Do you understand that?

4            THE DEFENDANT:  I do, your Honor.

5            THE COURT:  There is a provision in this plea

6    agreement that you've got with the government in which the

7    government would have agreed to a downward variance equivalent

8    to a one-level decrease in the offense level if there was a

9    global resolution, meaning a guilty plea, by yourself, Gerald

10   Shvartsman, and Bruce Garelick by April 2, 2024.  Do you

11   understand that?

12           THE DEFENDANT:  I do, your Honor.

13           THE COURT:  Do you understand that because there is no

14   global resolution and global plea by April 2, that the

15   government is relieved of its obligation to agree to that

16   downward variance in that paragraph?

17           Do you understand that?

18           THE DEFENDANT:  I do, your Honor.

19           MR. FUTERFAS:  May we have a moment, your Honor.

20           (Defendant conferring with his counsel)

21           MR. FUTERFAS:  Thank you, your Honor.

22           THE COURT:  Okay.  Now, Mr. Shvartsman, in your plea

23   agreement, you've waived your right to appeal or otherwise

24   challenge any sentence that is 57 months or below.  In other

25   words, if I sentenced you to 57 months or anything less than 57

O433MSHP

1  months, you would have no right to appeal or otherwise try to

2  challenge that sentence.

3         Do you understand that?

4         THE DEFENDANT:  Yes, your Honor.

5         THE COURT:  In your plea agreement, you've also waived

6  your right to appeal or otherwise challenge any term of

7  supervised release that is 3 years or less.  Do you understand

8  that?

9         THE DEFENDANT:  Yes, your Honor.

10        THE COURT:  And in your plea agreement, you've also

11  agreed to waive your right to appeal or otherwise challenge any

12  fine that is less than or equal to $5 million or forfeiture

13  amount that is less than or equal to $18.2 million, or the

14  special assessment of $100.

15        Do you understand that?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  In your plea agreement, you've also waived

18  any and all right that you have to withdraw your plea or to

19  attack your conviction or sentence, either on direct appeal or

20  collaterally, on the ground that the government has failed to

21  produce any discovery material, other than information

22  establishing your factual innocence, including Jencks Act

23  material, *Brady* material, and impeachment material that has not

24  already been produced as of the date of the signing of the

25  agreement.

O433MSHP

1          Do you understand that?

2          THE DEFENDANT:  Your Honor, can I speak to my lawyer

3     for a minute, please?

4          THE COURT:  Yes, of course.

5          (Defendant conferring with his counsel)

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Do you need to talk to your lawyer

8     further?

9          THE DEFENDANT:  No, thank you.

10         THE COURT:  Do you understand the waiver in your plea

11    agreement?

12         THE DEFENDANT:  I do.

13         THE COURT:  Does the government have any other aspects

14    of the plea agreement that they would like me to discuss with

15    Mr. Shvartsman?

16         MR. NESSIM:  No, your Honor.

17         THE COURT:  Mr. Futerfas, any other aspects of the

18    plea agreement to discuss?

19         MR. FUTERFAS:  No, thank you, your Honor.

20         THE COURT:  Mr. Shvartsman, does this written plea

21    agreement constitute your complete and total understanding of

22    the entire agreement between you and the government?

23         THE DEFENDANT:  It does, your Honor.

24         THE COURT:  Other than what is written in this

25    agreement, has anyone made any promises to you or offered you

O433MSHP

1    any inducements to plead guilty or to sign the agreement?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Has anyone threatened you or forced you to

4    plead guilty or to sign the plea agreement?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  Has anyone made a promise to you as to

7    what your sentence will be?

8              THE DEFENDANT:  No, your Honor.

9              THE COURT:  Now what I'd like you to do is to tell me

10   in your own words what it is that you did that makes you

11   believe that you are guilty as charged in Count Three of the

12   superseding indictment.

13             THE DEFENDANT:  Between October 1st and October 5 --

14   sorry.

15             THE COURT:  Read slowly, please.

16             THE DEFENDANT:  I apologize.

17             Between October 1st and October 5, 2021, I possessed

18   material information about DWAC's pursuit of TMG that was not

19   publicly available to the general public.

20             During this time, I had a duty to DWAC to keep this

21   information confidential and not act upon it.  I purchased

22   2 million DWAC warrants on October 1st, 4th, and 5th, 2021, and

23   information I had was a factor in my decision to purchase the

24   warrants.

25             After the DWAC-TMG merger was executed and became

1    public on or about October 20, 2021, I sold those warrants at a

2    profit.

3           THE COURT:  DWAC is the Digital World Acquisition

4    Group; is that right?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  And TMG is Trump Media?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  And did you know what you were doing was

9    wrong and illegal?

10          THE DEFENDANT:  I understand that these trades were

11   unlawful; sir, yes.

12          THE COURT:  Excuse me?

13          THE DEFENDANT:  I understand that these trades were

14   unlawful, yes.

15          THE COURT:  Does the government have additional

16   questions that they'd like me to ask the defendant?

17          MR. NESSIM:  Just to clarify, the defendant

18   understands that at the time and not now.  I can also make a

19   proffer on venue.

20          THE COURT:  Let me take it in pieces.

21          At the time that you engaged in this conduct, did you

22   understand that what you were doing was wrong and illegal?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Okay.  Does the government wish other

25   questions?

O433MSHP

1          MR. NESSIM:  Not as to the allocution, your Honor.

2          THE COURT:  Do you want to make a proffer as to venue?

3          MR. NESSIM:  Yes, your Honor.  As part of executing

4    these purchases of warrants, the defendant contacted by phone

5    and other means of communication a broker located in Manhattan

6    who executed those purchases on defendant's behalf.

7          THE COURT:  Did you do that, Mr. Shvartsman?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Is there any objection as to venue,

10   Mr. Futerfas?

11         MR. FUTERFAS:  No, there's not, your Honor.

12         THE COURT:  Mr. Futerfas, do you know of any valid

13   defense that would prevail at trial or any reason why your

14   client should not be permitted to plead guilty?

15         MR. FUTERFAS:  No, your Honor.

16         THE COURT:  Would the government please summarize what

17   its evidence would be if the defendant were to go to trial.

18         MR. NESSIM:  Yes, your Honor.  The government's

19   evidence at trial would include the testimony of numerous

20   witnesses as well as the admission of documents, including the

21   non-disclosure agreements signed by the defendant,

22   communications and minutes referencing DWAC board meetings and

23   inside information, communications among the conspirators

24   concerning information relating to DWAC, trading data and the

25   execution of trades, as well as the sale of securities.

O433MSHP

1        All told, that evidence would establish that the
2   defendant engaged in the crime of insider trading when he
3   purchased DWAC warrants while in possession of material
4   non-public information that he had misappropriated from DWAC in
5   violation of his duty willfully and knowingly.

6        THE COURT:  Mr. Shvartsman, were you able to follow
7   what the prosecutor said?

8        THE DEFENDANT:  I was, your Honor.

9        THE COURT:  Did you do what he said you did?

10       THE DEFENDANT:  Yes, your Honor.

11       THE COURT:  Mr. Futerfas, do you agree there is a
12  sufficient factual predicate for the guilty plea?

13       MR. FUTERFAS:  Yes, your Honor.

14       THE COURT:  Do you know of any reason that I should
15  not accept your client's plea of guilty?

16       MR. FUTERFAS:  No, your Honor.

17       THE COURT:  Does the government agree there is a
18  sufficient factual predicate for the guilty plea?

19       MR. NESSIM:  Yes, your Honor.

20       THE COURT:  Does the government know of any reason I
21  should not accept the defendant's plea of guilty?

22       MR. NESSIM:  No, your Honor.

23       THE COURT:  Mr. Shvartsman, how do you plead to Count
24  Three of the superseding indictment?

25       THE DEFENDANT:  Guilty, your Honor.

O433MSHP

1          THE COURT:  Mr. Shvartsman, because you acknowledge

2     that you are in fact guilty as charged in Count Three of the

3     superseding indictment, because I'm satisfied that you know of

4     your rights, including your right to go to trial, and that you

5     are aware of the consequences of your plea, including the

6     sentence which may be imposed, and because I find that you are

7     knowingly and voluntarily pleaing guilty and knowingly and

8     voluntarily entered into the plea agreement, I accept your

9     guilty plea and I enter a judgment of guilty on Count Three of

10    the superseding indictment.

11          The probation department will want to interview you in

12    connection with the presentence report that it will prepare.

13    Mr. Futerfas, I assume that you or defense counsel wish to be

14    present for an interview in connection with that report.

15          MR. FUTERFAS:  We do, your Honor.  Thank you.

16          THE COURT:  I order there be no interview unless

17    defense counsel is present.

18          Mr. Shvartsman, if you choose to speak to the

19    probation department, make sure that anything that you say is

20    truthful and accurate.  I will read the report carefully, and

21    it is important to me in deciding what sentence to impose.  You

22    and your counsel have the right to examine the report and to

23    comment on it at the time of sentencing.  I urge you to read it

24    and discuss it with your lawyer before sentencing.  If there

25    are any mistakes in it, point them out to your lawyers so that

O433MSHP

1    they can bring them to my attention before sentencing.

2           Will you do that?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  We need a date and time for sentencing.

5           July 17 at 2 p.m.  But I'm also prepared to impose

6    sentence on Mr. Shvartsman on the same day I'm imposing

7    sentence on his brother.

8           MR. FUTERFAS:  Your Honor --

9           THE COURT:  Do you have a preference?

10          MR. FUTERFAS:  I think so.  What date is Mr. Gerald

11   Shvartsman on for, your Honor?

12          THE COURT:  July 11.

13          MR. RIOPELLE:  You can put us both on the 17th, then

14   we can miss the July 4th issue.

15          MR. FUTERFAS:  My preference would be for July 17.

16   I'm starting a trial on June 10 in the Eastern District of New

17   York, and there is a greater likelihood I'll have completed

18   that trial by the 17th than the week before.

19          THE COURT:  We'll set sentencing for July 17 at 2 p.m.

20   And we'll do Gerald Shvartsman at 3 p.m. that day.  I'll enter

21   a separate order to that effect in the case of Gerald

22   Shvartsman.

23          So, the sentencing in this case is set for July 17 at

24   2 p.m.

25          I direct the government to provide the probation

O433MSHP

1   officer with its factual statement within seven days.  Defense

2   counsel must arrange for the defendant to be interviewed by the

3   probation department within two weeks.

4           Let me refer counsel to my individual rules and

5   practices for criminal cases available on the court's website

6   which contains some rules regarding sentencing submissions.

7           In accordance with those rules, the defense

8   submissions are due two weeks prior to sentencing.

9   Mr. Futerfas, that would be on July 3.  If you wanted to do it

10  earlier than July 3, that's also fine with me.  But July 3 is

11  your date.  The government's submissions are due one week prior

12  to sentencing.

13          In the case of Gerald Shvartsman we'll enter an order

14  also reflecting the new dates for sentencing submissions.

15          Is there any objection to Mr. Shvartsman's bail being

16  continued as set?

17          MR. NESSIM:  No, your Honor.

18          THE COURT:  So bail will be continued as set.

19  Mr. Shvartsman, do you understand that all the conditions on

20  which you were released up to now continue to apply, and that a

21  violation of any of those conditions can have very serious

22  consequences for you at the time of sentencing?

23          THE DEFENDANT:  I do, your Honor.

24          THE COURT:  You must be in this courtroom for

25  sentencing at the time and date set or you will be guilty of a

O433MSHP

1   separate crime, that of bail jumping, and subject to a fine

2   and/or prison term in addition to whatever sentence you may

3   receive for the crime to which you've just pled guilty.

4            Do you understand that?

5            THE DEFENDANT:  Yes.  I will be here.

6            THE COURT:  Okay.  Did the government have the

7   anything further?

8            MR. NESSIM:  No, your Honor.

9            THE COURT:  Mr. Futerfas, anything further?

10           MR. FUTERFAS:  Nothing, your Honor.  Thank you.

11           THE COURT:  Good day, everybody.  Thank you.

12           (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25